SWEEDEN v. ATKINSON IMPROVEMENT CO.

Opinion delivered February 7, 1910.

1.  ELEVATORS—LIABILITY OF OWNER.—While the owner and manager of an elevator operated in a business building for the purpose of carrying the persons having business therein up and down is not bound to serve the public like a common carrier of passengers, yet he is bound to exercise the highest degree of skill and care that is con-

sistent with the practical operation of such elevators to guard against accidents and injuries resulting therefrom to passengers, while such elevators are being operated. (Page 401.)

2. SAME—NEGLIGENCE OF SERVANT.—The owner and manager of a passenger elevator is liable for an injury to a passenger caused by the negligence of a servant while acting as such and within the scope of his employment. (Page 402.)

3. MASTER AND SERVANT—LIABILITY OF MASTER FOR SERVANT'S ACTS.—A master is civilly liable for an injury caused by the negligent act of his servant when done within the scope of his employment, even though the master did not authorize or know of such acts or may have disapproved of or forbidden them. (Page 402.)

4. SAME—LIABILITY FOR SERVANT'S INDEPENDENT ACT.—A master is not liable for an independent, negligent or wrongful act of a servant done outside of the scope of his employment. (Page 402.)

5. SAME—LIABILITY OF MASTER FOR SERVANT'S ACTS.—The act of a servant for which his master is liable must pertain to something that is incident to the employment for which he is hired, and which it is his duty to perform, or be for the benefit of the master. (Page 402.)

6. SAME—INDEPENDENT NEGLIGENCE OF SERVANT.—Where a servant in charge of a passenger elevator invites a child to ride therein as his guest, and the child is injured by the servant's negligence, the master is not liable. (Page 405.)

7. SAME—DANGEROUS INSTRUMENTALITY.—A master is not liable to one injured by the negligence of an employee operating a passenger elevator, who was acting outside the scope of his employment in letting another ride therein, upon the theory that a master is responsible for the acts of its servant in whose charge it placed such dangerous agency, where the injury resulted from the negligence of the employee, and not from the dangerous character of the elevator. (Page 405.)

8. NEGLIGENCE—DANGEROUS MACHINERY.—Where a child was injured in a passenger elevator, the owner will not be liable to the child on the theory that the elevator was a dangerous temptation to the thoughtlessness of a child. (Page 405.)

Appeal from Sebastian Circuit Court, Fort Smith Division; *Daniel Hon,* Judge; affirmed.

*J. H. Carmichael,* for appellant.

For the law governing owners and operators of passenger elevators, and their duty to third parties, see 10 Am. & Eng. Enc. of L. (1 ed.), 946-7; 25 L. R. A. 33; 81 S. W. 367; 97 Tenn. 367; 25 S. W. 1126; 76 S. W. 1040. Negligence of a parent or other person having a child's custody will not be imputed to the child in a suit brought by a next friend for it, and the jury are

the sole judges as to whether the child's contributory negligence was the cause of its injuries. 2 Am. & Eng. Enc. of L. (Old Ed.) 750; 63 Ark. 185; 59 Ark. 185; 55 Ark. 254; 88 Ark. 484; 77 Ark. 398. It is also a question for the jury whether or not a servant is acting within the "course of his employment." 48 Ark. 181; Hale on Torts, 160. See also *Id.* 147; Words and Phrases, 6357. As to the liability of the master for negligent acts of the servant in charge of dangerous machinery, see 15 Ark. 127; 40 Ark. 324; 107 Mass. 108; 14 How. 468; 132 U. S. 518; 60 Ark. 557; 52 Ark. 524; 90 N. Y. 477.

*Hill, Brizzolara & Fitzhugh,* for appellee.

1. An act done by a servant while engaged in his master's work, but not done as a means or for the purpose of performing that work, is not to be deemed the act of the master. 5 Supp. Am. & Eng. Enc. of L. 1279; 114 N. Y. 902. The master is not responsible for either the act or omission of the servant where the latter acts without reference to the service for which he was employed, but to effect some independent purpose of his own, and not for the purpose of performing the work of his master. 2 Cooley on Torts, 1031; 93 Cal. 558; Wood on Master & Servant, 562; 162 Mass. 319; 127 Mich. 496; 59 Ark. 395; 75 Ark. 579; 144 Fed. 806; 20 Am. & Eng. Enc. of L. 168; 156 N. Y. 75; 111 N. Y. Supp. 1057. In this case the appellee is not liable, for the reason that the servant had for the time being ceased to be appellee's servant; the negligent act, if any, was committed by the servant while not in the prosecution of appellee's business, but in the course of a private undertaking of his own. 71 Atl. 296; 26 Cyc. 1536. He was acting without the course of his employment; and if he had no authority to perform the act, the master is not liable, regardless of whether his instructions were followed. Cases cited by appellant, which are in point, support this contention. 14 How. 468; 132 U. S. 518; 40 Ark. 298; 69 Pa. St. 209; 59 Ark. 395; 48 Ark. 177; 89 Ark. 92. There was no conflict in the evidence. Nothing remained to be settled but a question of law. The case was properly taken from the jury.

2. Appellant was a trespasser, or at most a licensee, and defendant discharged all duty it owed her. 98 Pac. 312; 144 N. Y. 301; 62 S. E. 387; 69 Ark. 468; 81 Ark. 368; 137 Ind. 15; 37 Ill. App. 601; 97 Minn. 305; 103 N. Y. App. Div. 577; 107 *Id.*

120; 211 Pa. St. 107; 127 Ia. 601; 152 Fed. 481; 218 Pa. St. 339.

FRAUENTHAL, J.   This was an action instituted by Goldie Sweeden, an infant about ten years old, by her next friend, against the defendants below, the Atkinson Improvement Company and the Nelson Investment Company, for damages on account of personal injuries sustained by her.   The Atkinson Improvement Company was the owner of a six-story building in the city of Fort Smith, Ark., in which it had a number of tenants.   In this building this defendant owned and operated an elevator for carrying passengers up and down, and it maintained and used the same for its tenants and those having business in the building. The Nelson Investment Company was employed in renting the various rooms and apartments in the building to the tenants and in collecting the rents.   On the day of the injury complained of the elevator was operated by one Tom Elliott, who was in the employ of the owner of the building, and the plaintiff was injured while entering the elevator at the fifth floor of the building.   The evidence adduced upon the trial of the case was introduced entirely by the plaintiff, the defendant offering no testimony.   There is no conflict in the testimony of the various witnesses, and this evidence establishes the following facts: On October 21, 1908, there was a show at Fort Smith, and on that day the wife of the elevator man, Tom Elliott, in company with his two small children and the plaintiff, went to Fort Smith in order to see the parade.   Tom Elliott took them as his guests up to a vacant room in the fifth story of the building in order that they might there rest and see the parade.   He did this without any permission of the owner or of any one in control of the building.   Neither the wife or children of Elliott or the plaintiff had any business with any tenant in the building, but were in the building solely as the guests of Elliott; and he had been cautioned by the owner and controller of the building not to let children get in or ride on the elevator. The room in which Elliott had placed his wife and plaintiff was about six feet from the entrance of the elevator; and while he was running it the plaintiff asked him a number of times to let her ride.   It was about the noon hour, when, according to the custom, the patrons of the elevator ceased using it during that time; and Elliott said to the plaintiff: "Wait till the white folks quit riding. The parade is nearly ready to start, and I will take you all for a

little ride." When the patrons of the elevator ceased using it, during the latter part of the noon hour, Elliott stopped the elevator in front of the room at the fifth floor, and said to plaintiff and his little boy, who was three years old, that "the white folks have quit riding now," and to come, and he would take them for a ride. Elliott was standing just outside of the door of the elevator, which he had opened, and the little boy ran by him into the elevator and grasped the controller. Elliott jumped in and quickly took his hand from the controller. But the elevator was running down and the plaintiff, following on the heels of the boy and Elliott, attempted to step into the elevator, and was precipitated down and caught between the elevator and the portion of the wall below the fifth floor as the elevator stopped on being reversed by Elliott; and she was severely injured.

Before all the testimony had been introduced, the plaintiff took a nonsuit as to the defendant Nelson Investment Company. Upon the conclusion of the testimony, the circuit court peremptorily directed the jury to return a verdict in favor of the defendant the Atkinson Improvement Company, which was done. And from the judgment entered on that verdict the plaintiff prosecutes this appeal.

The liability of the defendant to respond for the damages sustained by the plaintiff depends upon the duty which it owed to her, if any, under the facts and circumstances of this case. The plaintiff was injured while attempting to enter a passenger elevator that was owned by the defendant, and which it operated for the benefit of its tenants located in its building. It is well settled that, while the owner and manager of an elevator operated in a business building for the purpose of carrying the persons having business therein up and down is not bound to serve the public like a common carrier of passengers, nevertheless the law has imposed upon such owner the same duty to protect the passengers in the elevator from injury that it has exacted of carriers of passengers by railroad or other means. With regard to the safety of their passengers, the same rules of law that are applicable to other carriers of passengers are applicable to those operating passenger elevators. They are bound to exercise the highest degree of skill and care and foresight that is consistent with the practicable operation of such elevators to guard against

accidents and injuries resulting therefrom to passengers, while they are operating such elevators themselves or by their servants. 1 Hutchinson on Carriers, § 100; 6 Cyc. 596; *Springer* v. *Ford*, 189 Ill. 430; *Treadwell* v. *Whittier*, 80 Cal. 575; *Phillips* v. *Pruitt*, 26 Ky. Law Rep. 831; *Luckel* v. *Century Bldg. Co.*, 177 Mo. 608; *Fox* v. *Philadelphia*, 208 Pa. St. 127.

The owner and manager of a passenger elevator is therefore liable for the injury to a passenger which results from the negligent act of a servant while acting as such and within the scope of his employment. It is contended by the defendant that it is not liable for the injury sustained by the plaintiff in this case for the reason that at the time she was injured Tom Elliott was not acting within the scope of his employment, but solely to effect some independent purpose of his own. It is well settled that the master is civilly liable for an injury caused by the negligent act of his servant, when done within the scope of his employment, "even though the master did not authorize or know of such acts or may have disapproved of or forbidden them." Wharton on Negligence, § 344; *Little Rock & Ft. S. Ry. Co.* v. *Miles*, 40 Ark. 298.

But it is also well settled that the master is not liable for an independent, negligent or wrongful act of a servant done outside of the scope of his employment. 2 Cooley on Torts, 1030; 26 Cyc. 1526.

There is no definite and fixed rule by which it can be said whether the acts of the servant are within or outside the scope of his employment. Each case must be determined by its own particular facts and circumstances. But there are certain well settled that, while the owner and manager of an elevator operated the facts and circumstances of the particular case, the servant was acting within the scope of his employment at the time the act complained of was done. The act of the servant for which the master is liable must pertain to something that is incident to the employment for which he is hired, and which it is his duty to perform, or be for the benefit of the master. It is therefore necessary to see in each particular case what was the object, purpose and end of the employment and what was the object and purpose of the servant in doing the act complained of. The mere fact that he was in the service generally of the

master or that the servant was in possession of facilities afforded by the master in the use of which the injury was done would not make the act attributable to the master. The act must have been done in the execution of the service for which he was engaged. And if the servant steps aside from the master's business to do an independent act of his own and not connected with his master's business, then the relation of master and servant is for such time, however short, suspended; and the servant, while thus acting for a purpose exclusively his own, is a stranger to his master for whose acts he is not liable. In 2 Cooley on Torts, 1032, it is said: "When a servant acts without reference to the service for which he is employed, and not for the purpose of performing the work of his employer, but to effect some independent purpose of his own, the master is not responsible for either the act or omission of the servant." In 26 Cyc. 1536 it is said: "The act of a servant done to effect some independent purpose of his own, and not with reference to the service in which he is employed, or while he is acting as his own master for the time being, is ordinarily held not to be within the scope of his employment as to render his master liable therefor. If the injury occurs at such a time, it is immaterial that the facilities afforded to the servant by his relation to the master were used in committing the injury, if such facilities were not used with the authority or consent of the master." Wood on Master & Servant, 562.

Thus, where a servant, without the knowledge of his master, took the latter's horses and carriage for his purposes, and injured one by his negligence during such time, the master was held not liable. *Clark* v. *Buckmobile Co.,* 107 App. Div. (N. Y.) 120; *Quigley* v. *Thompson,* 211 Pa. St. 107.

Where a yard foreman, without authority to do so, took an engine and car, and gave himself and fellow servants a free ride to a meeting, and one of the company was injured by its negligent management, it was held the master was not liable. *Chicago, St. Paul, M. & O. Ry. Co.* v. *Bryant,* 65 Fed. 969.

A section boss loaned, without authority, a hand car to children to play with, and thereby one was injured. It was held that this was not the act of the master. *Robinson* v. *McNeil,* 18 Wash. 163.

It has been held that a servant is not acting in the line of his employment when he invites a boy to ride with him in his master's vehicle. *Driscoll* v. *Scanlan,* 165 Mass. 348; *Schulwitz* v. *Delta Lumber Co.,* 126 Mich. 559.

In *Bowler* v. *O'Connell,* 162 Mass. 319, the servant invited a boy six years of age to ride on a horse that the servant was leading to water. The boy was thrown and injured. The court said: "The true test of liability on the part of the defendant is this: Was the invitation given in the course of doing their work or for the purpose of accomplishing it? Was the act done for the purpose or as a means of doing what Frank was employed to do? If not, then, in respect to that act, he was not in the course of the defendant's business. An act done by a servant, while engaged in his master's work, but not done as a means or for the purpose of performing that work, is not to be deemed the act of the master." See also *Formall* v. *Standard Oil Co.,* 127 Mich. 496.

In the case of *Snyder* v. *Han. & St. Joe R. Co.,* 60 Mo. 413, a parent claimed damages for injuries received by an infant child while attempting to get upon one of the defendant's cars. The petition alleged an invitation from the defendant's servant in charge of the car to the child, but showed no authority in the servant to permit persons to ride on the car, and no connection between such invitation and the service which the servant was employed to render. The petition was held to be fatally defective.

In the case of *Railway Co.* v. *Bolling,* 59 Ark. 395, this court held that a section foreman was not acting within the scope of his employment in taking a child for a ride upon a hand car; and that the master was not liable for the negligence of the section crew in carelessly injuring the child. *St. Louis S. W. R. Co.* v. *Bryant,* 81 Ark. 368; *St. Louis, I. M. & S. Ry. Co.* v. *Pell,* 89 Ark. 92.

It will thus be seen that the test of a master's liability is not whether a given act was done during the existence of the servant's employment, but whether it was done while carrying out the object and purpose of the master's business; for if the act was done without authority and solely for purposes exclusively the servant's, then the master is not liable during such

time that such act was done.  During such time he stepped aside from his master's business and his master's employment, and for his act the master was not liable.

In the case at bar the uncontroverted evidence showed that without authority from the master the servant had invited the plaintiff into the building as his own guest and had invited her into the elevator as his own guest for the purpose of taking her for a ride.  He did this not for the purpose of furthering the interest of his employer, nor was the act incident to the business of the defendant in which he was engaged.  It was wholly and exclusively a purpose of his own.  It was the same as if he had taken the carriage and horses of his employer without permission and taken his little friend for a ride in that.  He simply used the elevator in which to take the plaintiff for a ride; and when he did this, he stepped aside from the defendant's business, even though it was for a short time, to do an act not connected with that business, nor for the benefit of his employer. The act done was not within the scope of his employment, and was not done by authority or permission of the defendant.  During the time that this independent act and exclusive purpose of the servant was being carried out, the relation of master and servant between the defendant and Elliott was suspended.  The defendant was therefore not liable for the injury which was then sustained by the plaintiff, although it might have been caused by the negligence of Elliott.

It is urged by counsel for appellant that the elevator was a dangerous agency, and that the defendant is responsible for the acts of its servant in whose charge it placed such dangerous agency.  But that rule cannot be applicable to the facts of this case.  The injury to the plaintiff was not caused by the dangerous character of the elevator; but the injury was due to the negligence of Elliott, who had it in charge, and the defendant was not liable under the circumstances of this case for his negligence.  *Foster Herbert Cut Stone Co.* v. *Pugh,* 115 Tenn. 688; *Daugherty* v. *Chicago, M. & St. P. R. Co.,* 114 N. W. 902.

Nor can the defendant be held liable for the injury of plaintiff on the ground that the elevator was attractive and dangerously tempting to the thoughtlessness of a child.  The doctrine of liability evolved in what is known as the "turntable

cases" is predicated on the fact that the dangerous machine is so situated that its owner might reasonably expect that children too young to appreciate the danger would resort to and amuse themselves by using it, and on the theory that the owner was negligent in failing to take reasonable precaution to prevent such use. *Railroad Company* v. *Stout,* 17 Wall. 657; *Chicago, B. & Q. R. Co.* v. *Krayenbuhl,* 59 L. R. A. 920. But in the case at bar the plaintiff did not go to the elevator because she was attracted thereto by it, but she went at the invitation of her host, Tom Elliott. She was not injured by reason of the dangerous machine, but on account of the alleged negligence of Elliott, who was in charge of it at the time.

In this case all the witnesses introduced at the trial were called by the plaintiff. There is no conflict in the testimony of these witnesses. The evidence in the case is therefore undisputed. That evidence establishes a state of case showing that the plaintiff sustained an injury by reason of an act not committed by the defendant, nor by the act of one who at the time was acting for it or in the scope of his employment, but by the act of one who was acting at the time independently for himself and without permission or authority of defendant, and for which the defendant is not responsible.

The lower court did not, therefore, err in directing a verdict for the defendant.

The judgment is affirmed.