## ETERNA v. DODGE.

MASTER AND SERVANT—SCOPE OF EMPLOYMENT—LIABILITY OF EM-
PLOYER FOR NEGLIGENCE OF EMPLOYEE ON ERRAND FOR SUPERIN-
TENDENT.

In an action for injuries to a five-year old boy, caused
by defendant's motor truck while being driven by an em-
ployee on an errand for defendant's superintendent, who
hired him and directed him what to do, where the de-
fense was that, at the time of the accident, the driver
was not engaged in the master's business, a judgment in
favor of plaintiff is affirmed by an equally divided court.

Error to Wayne; Marschner (Adolph F.), J.   Sub-
mitted January 25, 1927.   (Docket No. 62.)   Decided
June 24, 1927.   Rehearing denied October 3, 1927.

Case by William Eterna, an infant, by his next
friend, against Horace E. Dodge for personal injuries.
Judgment for plaintiff.   Defendant brings error.   Af-
firmed by an equally divided court.

*Monaghan, Crowley, Reilley & Kellogg (Miller, Can-
field, Paddock & Stone,* of counsel), for appellant.
*Martin & Williams,* for appellee.

SHARPE, C. J.   A motor truck, owned by the de-
fendant and driven by an employee at his boat works,
ran over and badly injured the plaintiff, a boy five
years of age, at the intersection of Kercheval and
Meldrum avenues, in the city of Detroit, about 2 o'clock
in the afternoon of December 29, 1923.   The testi-
mony submitted by plaintiff tended to prove that the
boy, with several other older children, started to cross
Kercheval avenue at the east side of Meldrum; that,
when nearly half way across, he stopped near the south

Appeal and Error, 4 C. J. § 3113; 18 L. R. A. (N. S.) 416;
18 R. C. L. pp. 794-797; 3 R. C. L. Supp. 849; 4 R. C. L. Supp.
1206; 5 R. C. L. Supp. 1001; 6 R, C. L. Supp. 1085.

rail of one of the street car tracks on Kercheval, and that the truck, driven at a speed of from 25 to 30 miles per hour, approached from the west, and, without swerving from the direction in which it was proceeding, struck the boy, one of the wheels passing over his body. The defendant had testimony that the boy stopped in the street and turned and ran into the truck, and that the speed of the truck was about 15 miles an hour. Plaintiff had verdict for $40,000. On motion for a new trial, he was required to and did remit $20,000 thereof, and a judgment was entered for the balance. Defendant reviews by writ of error.

It appears that some days before the accident, the defendant and William Martin, his superintendent at the works, were on a boat then being tested on a trial trip. The hull had been built at defendant's works and then taken to the Great Lakes plant for completion. When ready for its trial trip, Martin went down "to help them out" as "a representative of the Horace E. Dodge Boat Works." While on the boat, his hat was blown into the water. It was a cold day (Martin had on an overcoat), and one of the stewards on the boat gave him a tourist cap to wear under promise that he "would send it back to him." On the day of the accident, the steward called for his cap, which had not been returned, and Martin directed the driver of the truck to go to his house and get the cap. He did so. When returning with the cap, the accident occurred.

The defendant testified that he had given instructions to Martin that "this truck was to be used only in the boat works' business, and never to be used by any employee for any purpose of his own." Martin testified:

"Q. Did you have any instructions from Mr. Dodge as to what that truck should be used for?

"A. Mr. Dodge instructed everybody, and instructed me not to go out on anything except that pertained

to our business, to pick up stock, and deliver stuff like that.

"*Q.* He gave you these positive instructions?

"*A.* Absolutely.

"*Q.* And when he went out after that cap, he went out for you, as an accommodation to you?

"*A.* Yes.

"*Q.* So that he went on an errand for you?

"*A.* Yes, sir.

"*Q.* And it had no connection whatsoever with Mr. Dodge's business?

"*A.* No, sir."

On cross-examination he said:

"When we got that truck, he said, 'I don't want that truck to be used for all purposes. Use it for the business, to run after stuff and pick it up.'

"*Q.* He told you he did not want it taken out to his farm, I suppose?

"*A.* No. He said, 'Don't take it out for anything except pertaining to the business at the boat works.'

"*Q.* Inasmuch as you were his representative down at Great Lakes, when this boat was being tried out, you having gone down there as a representative of the boat works for Mr. Dodge, and having an interest in the business of Mr. Dodge, and having lost your cap while engaged in the business of Mr. Dodge—didn't you feel, when you sent the truck out to get this cap, that you were merely returning something that had been a benefit to you or to the boat works?

"*A.* I sent that boy down there merely because I used my good judgment, what I thought was good judgment. I knew the boy and I was ready—

"*Q.* Don't you feel now—sending him after that cap, if you did such a thing, that it was for the good of the business?

"*A.* Yes, sir; yes, sir."

Anthony Messana, a brother-in-law of plaintiff's father, testified that shortly after the accident he called the defendant on the telephone, told him he was speaking for the injured boy, and asked him, "What are you going to do about it to help the father out?" and he answered, "Why, I am not going to do anything about

it;" that defendant said it was his truck, and that the driver was working for him at the time of the accident; that he then asked, "Why don't you want to do anything about it?" and the defendant answered, "Because my driver tells me he wasn't at fault."

1. Directed Verdict.   To render the defendant liable, it must appear that the driver was acting in the scope of his employment at the time of the accident.

"The phrase 'in the course or scope of his employment or authority,' when used relative to the acts of a servant, means while engaged in the service of his master, or while about his master's business." *Riley* v. *Roach*, 168 Mich. 294, 307 (37 L. R. A. [N. S.] 834).

If "the tort of the servant was committed while he was about the business of his master," it is no defense to show that he was at the time acting in disobedience of instructions given him by his master. *Loux* v. *Harris*, 226 Mich. 315.

The liability of the master for injuries to third persons, caused by the negligent act of his servant, has been much discussed by courts and text-book writers.   In 39 C. J. p. 1265 *et seq.*; 18 R. C. L. p. 786 *et seq.*; and 6 Labatt's Master and Servant (2d Ed.), chapters 98, 99, the different shades of meaning given to the words "scope of employment" and "about his master's business" are stated, and many cases and authorities supporting the text are cited.   To render the master liable, the service in which the servant was engaged at the time of the accident must have been rendered "with a view to the furtherance of his master's business, and not for a purpose personal to himself," *Barrett* v. *Railway Co.*, 106 Minn. 51 (117 N. W. 1047, 18 L. R. A. [N. S.] 416, 130 Am. St. Rep. 585) ; "with a view to the furtherance of that business," *North Chicago City R. Co.* v. *Gastka*, 128 Ill. 613 (21 N. E. 522, 4 L. R. A. 481) ; "in some way connected with such service,"

*Wabash R. Co.* v. *Savage,* 110 Ind. 156 (9 N. E. 85) ; as an "incident to the business of the defendant in which he was engaged," *Sweeden* v. *Atkinson Improvement Co.,* 93 Ark. 397 (125 S. W. 439, 27 L. R. A. [N. S.] 124) ; in performing "acts in any sense warranted by the express or implied authority conferred upon him, considering the nature of the services required," *Stone* v. *Hills,* 45 Conn. 44 (29 Am. Rep. 635).

It will serve no useful purpose to further refer to the authorities, as we do not find any case in which the facts here presented were in issue.    In the early case of *Chicago, etc., R. Co.* v. *Bayfield,* 37 Mich. 205, the relationship existing in such cases was discussed at length by Chief Justice COOLEY, and the duty of the servant to obey the orders of his master was pointed out.

The driver of the truck in this case was hired by Superintendent Martin to do such work as he directed him to do, and was subject to discharge by him at any time.    Had he refused to obey the order given him, his employment would doubtless have been terminated then and there.    There is no intimation that he did not receive full pay for the service rendered on the day of the accident.    Both he and the superintendent continued in the service of the defendant.    Neither of them was discharged for disobedience to orders.    In hiring the driver, the superintendent was acting within the scope of his employment and of the authority conferred on him by the defendant.    The driver was under no obligation to render a personal service to the superintendent, nor had the latter any authority to require any service from him except such as related to the business of the defendant.    The driver obeyed the order given him.    As was said in the *Loux Case,* "Certainly he was not driving on his own affairs."    There is nothing in the record to indicate that he knew the service was one personal to the

superintendent.    He did not inquire, nor was he told, how the cap came to be in the possession of Martin. The use of the steward's cap by the superintendent was an incident of the service he was at that time rendering for the defendant.    Had he not been supplied with a substitute for that blown into the water, the condition of the weather was such that he would have been compelled to quit the work of inspection he was then doing at the defendant's request. We think it was for the jury to say whether there was not an implied direction on the part of the defendant to the superintendent to see to it that the cap was returned to its owner.

The superintendent was assuming to act in the scope of his employment in giving the order to the driver. As indicated in his testimony, he thought it the proper thing to do under the circumstances.    His act was not so remote from his duty as to be altogether outside of and unconnected with his employment.    Neither was the act of the driver in obeying the order of his superior.    The trial court instructed the jury:

"The question arises as to whether or not the errand of the driver of the truck was fairly and reasonably incident to the nature, character or purpose of the business in which he was employed."

We think this instruction was justified by the proofs, and see no occasion to disturb the finding in answer to it.

2.    Excessive Verdict.    The only other error discussed by counsel is the denial of defendant's motion for a new trial because of the excessive verdict.    The plaintiff was very seriously injured as the result of the accident.    An operation disclosed a lacerated wound of the bladder, from the effects of which he will probably never recover.    Pneumonia developed from the shock, from which he made a recovery in about three weeks.    Infection caused trouble in the knee and hip, and an X-ray examination disclosed that

the pelvic bones were fractured and that an abscess had formed in the hip joint. The joint became ankylosed. There is a permanent shortening of his left leg by about two inches. He was in a hospital for twelve weeks, and received the attention of surgeons for several months afterwards at his home. His leg and hip were kept in a cast for more than three months. He had no use of his legs for about five months, and was not able to walk until the spring of the year 1925.

It will serve no useful purpose to discuss the many cases in which the claim here made has been considered by this court. This young boy, besides suffering much pain for a long period, will be crippled and is likely to be otherwise disabled as long as he lives. The trial court saw his condition and heard the three surgeons, who testified, detail the nature of his injuries and their probable effects. He was of the opinion that the verdict should not be reduced below $20,000. We are unwilling to interfere with his exercise of discretion in this respect.

The judgment is affirmed, with costs to appellee.

BIRD, SNOW, and McDONALD, JJ., concurred with SHARPE, C. J.

WIEST, J. I think the judgment should be reversed. The truck, at the time of the accident, was on a private errand of an employee and not in the service of defendant. The rule stated in *Loux* v. *Harris*, 226 Mich. 315, has no application; there the servant, at the time of the accident, was serving his master, but acting contrary to orders. Here the servant was but running an errand for another servant, and using defendant's vehicle outside of any business of the master.

STEERE, FELLOWS, and CLARK, JJ., concurred with WIEST, J.