HOWARD BURWELL *v.* ESTHER NEUMANN ET AL.
FRANK LAPOINTE ET AL. *v.* ESTHER NEUMANN ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued April 7—decided June 4, 1943.

*Martin E. Gormley,* for the appellant (named defendant).

*T. Holmes Bracken,* with whom, on the brief, was *Walter T. Faulkner,* for the appellees (plaintiffs).

JENNINGS, J.   These cases, tried together, involved the liability of the owner of an automobile for the damages resulting from the negligence of a driver, claimed by the plaintiffs to have been a subagent.   The assignments of error directed to the correction of the finding were not pursued in the brief.

On April 19, 1941, Esther Neumann asked her brother, Oscar Olson, to take her car, go to her former home in East Haven, disconnect a combination oil and gas stove left there by her, get a truck and move the stove to her father's house in Branford where she was then living.   The stove was too heavy for one man to lift, as Mrs. Neumann knew.   She gave her brother no money to hire a truck or driver and expected him to borrow a truck and to get a friend to help move the stove and to drive her car or the truck.   She gave him no instructions as to how he was to carry out her errand but left it entirely to his judgment and discretion.   She entrusted her automobile to her brother and he was given the right to control the automobile at all times in the performance of her business of moving the stove.

Olson thereupon secured two friends, drove them to East Haven in Mrs. Neumann's car, disconnected the stove and returned the friends to their homes.   Later,

Olson drove to the center of Branford, met the defendant Nicholas Dykun and asked him to help move his sister's stove. Dykun consented. Dykun stated to Olson that he wanted to try out Mrs. Neumann's car to see how it acted and Olson allowed him to operate it, telling him to drive the car from Branford Center over the new cutoff to Ten Acres, so that they could borrow the truck of a contractor. Dykun followed the route prescribed. Olson sat beside him and had the right to control the route, speed and operation of the automobile. While on the route to secure the loan of the truck, Dykun negligently injured the plaintiffs. Dykun did not have permission from Mrs. Neumann personally to drive her automobile. Down to the time of the collision the truck had not been procured.

On these facts the trial court concluded that both Dykun and Olson were engaged in Mrs. Neumann's business, that Olson had authority from the defendant not only to procure the assistance of Dykun but also to permit him to drive the car, that both were her servants and agents and that she was liable for the negligence which was the proximate cause of the plaintiffs' injuries. Mrs. Neumann claimed that Dykun was on his own business, that the circumstances furnished no ground for an implied authority in Olson to let Dykun drive the car and that she was therefore not liable for Dykun's negligence.

It is apparent that Olson was engaged on the business entrusted to him by his sister at the time of the injury to the plaintiffs. Mrs. Neumann claims that Olson, in rendering these services, did so merely as a matter of courtesy, and that he was not her servant, citing *Oleksinski* v. *Filip*, 129 Conn. 701, 30 Atl. (2d) 912. In that case a conclusion that the driver was not the servant of the defendant, who was a passenger in

the car, was sustained, but we also said (p. 702): "The fact that the transportation was gratuitous in itself is not decisive of the question of agency. A volunteer may in law be the servant of one who accepts his services." The trial court reasonably could have concluded that Olson was the servant and agent of Mrs. Neumann. Ibid.

Even so, Mrs. Neumann would not be liable on the theory here involved unless Olson had authority to use the services of Dykun in driving the car; and on the other hand, she would be liable if such authority existed. *Brown* v. *Wright,* 100 Conn. 193, 199, 123 Atl. 7. The car was being used to serve her purposes. The question is, did Olson have authority to make use of the services of Dykun in driving it? Such authority may be implied. *Davis* v. *King,* 66 Conn. 465, 472, 34 Atl. 107; *Kirk* v. *Showell, Fryer & Co., Inc.,* 276 Pa. 587, 120 Atl. 670. In *Archambault* v. *Holmes,* 125 Conn. 167, 4 Atl. (2d) 420, in discussing the liability of an automobile dealer for the negligence of a prospective purchaser whom the dealer's agent, sitting beside him, permitted to drive a car for demonstration purposes, we said (pp. 170, 171): "Where one permits another to operate a car but remains in control, the driver is no more than the alter ego of the other and his acts are in effect just as much the acts of that other as though the latter were the one actually operating the car. . . . The seller is absolved only where his agent has abandoned his right to control the operation of the car and surrendered that operation wholly to the purchaser. . . . The principle is the same as that applied in determining whether one who does work for another is his employee or an independent contractor, where we have said: 'The decisive test is who has the right to direct what shall be done and when and how it

shall be done? Who has the right to the general control?'" These statements are to be read in the light of the facts involved in the case then before us. As broad propositions, it is true, there is considerable authority to support them; notes, 44 A. L. R. 1385, 54 A. L. R. 852, 134 A. L. R. 978; but so applied the principle has been criticized by eminent legal scholars; *Cardozo, C. J.,* in *Grant* v. *Knepper,* 245 N. Y. 158, 162, 156 N. E. 650; 2 Mechem, Agency (2d Ed.), p. 1452; Mechem, 3 Mich. L. Rev. 198, 216; unless, indeed, the person driving the car is in fact "a mere instrument—a longer arm, which the servant wields and controls." But in the case before us the trial court has found in effect that, while Dykun was operating the car, Olson retained control over the way in which it was being operated, and that finding is not attacked. We must then assume that this case falls even within the more limited doctrine we have referred to, and that Dykun's negligence was in effect that of Olson.

Cases of this type present a difficult problem for both the trial and appellate court. If the facts lead to only one possible conclusion, the question is one of law. Ordinarily, however, and in this case, the question is one on which the decision of the trial court is final. It has to weigh all of the circumstances and then come to its conclusion. *Ritchie* v. *Waller,* 63 Conn. 155, 161, 28 Atl. 29; *Butler* v. *Hyperion Theatre Co., Inc.,* 100 Conn. 551, 555, 124 Atl. 220; *Ackerson* v. *Jennings Co., Inc.,* 107 Conn. 393, 399, 140 Atl. 760; *Neville* v. *Adorno,* 123 Conn. 395, 401, 195 Atl. 613; *Eterna* v. *Dodge,* 239 Mich. 421, 426, 214 N. W. 413. We cannot say that, on the finding, the trial court could not reasonably have concluded that Olson had authority to permit Dykun to drive the car and that, while the latter was driving, the former was in control. It fol-

lows that the basis for Mrs. Neumann's liability was established.

There is no error.

In this opinion the other judges concurred.