DAVIS *v.* KUKAR, ADM'X.

5-2612                                      357 S. W. 2d 275

Opinion delivered May 21, 1962.

*William H. Drew,* for appellant.

*John F. Gibson,* for appellee.

NEILL BOHLINGER, Associate Justice. On December 16, 1959, at approximately 7:50 p. m., Gerald Kukar was driving a 1956 Mercury sedan on U. S. Highway 65 in Chicot County and at approximately 45 feet north of the point where State Highway 144 intersects U. S. Highway 65, which point is known as McMillan Corner, the car driven by Gerald Kukar struck the rear of a 1956 John Deere tractor which was the property of the appellant, Alice-Sidney Farms. The tractor was driven by Joe Nathan Davis, an appellant herein who was an employee of the appellant, Alice-Sidney Farms. The force of the impact was such that Gerald Kukar died several hours after the accident in a nearby hospital and to recover damages for the death of said Gerald Kukar, the appellee, Agnes Kukar, individually and as administratrix of the estate of Gerald Kukar, brought action in the Chicot Circuit Court against the appellants herein.

She alleged that the appellant, Joe Nathan Davis, was a regular employee and acting in the scope of his employment for the Alice-Sidney Farms at the time of the accident; that the proximate cause of the accident was negligence of the Alice-Sidney Farms in permitting

the appellant, Joe Nathan Davis, to operate the tractor on the highway when they knew or should have known that he was not a qualified driver or operator; that the appellants were both negligent in operating the tractor driven by appellant, Joe Nathan Davis, along and upon the highway at the time of the accident without any rear lights operating on said tractor; that any rear lights on said tractor was not of a type approved by the laws of the State of Arkansas; and that such acts of negligence were the proximate cause of the injury and resulting death of Gerald Kukar.

Taking the sequence of events from the record, it is shown that the appellant, Joe Nathan Davis, had been working for Alice-Sidney Farms about a year and a half and had been a tractor driver for about a year. About 5:30 on the afternoon of December 16, 1959, the book-keeper for the Alice-Sidney Farms had gone to the home of the appellant, Joe Nathan Davis, and directed him to go to the Alice-Sidney tractor shed. He was directed by an employee of the Alice-Sidney Farms to take a certain tractor and proceed to a point on State Highway 144 where a car had been mired down or was in the ditch. State Highway 144 was undergoing some repairs and was muddy and rutted. Arriving at the point where the car was mired down, the appellant, Joe Nathan Davis, drove behind the car to pull it back and after he had hooked onto the car another employee of the Alice-Sidney Farms took the tractor and pulled the car to the front of the McMillan Store.

Appellant, Joe Nathan Davis, was told to take the tractor back to the farm. However, he waited in front of the McMillan Store until his boss had left the vicinity, then he turned the tractor and drove east across U. S. Highway 65 to Stene Dunn's farm where he stayed 15 to 20 minutes and took two of his friends from that point to Judge Locke's farm which was approximately two miles north of Dunn's. He there drove out in a pasture and left his friends at a house where he stayed two or three minutes and then started back south on U. S. Highway 65 and had reached the front of the Oasis Cafe,

about 45 feet north of the junction of State Highway 144 and U. S. Highway 65, when the accident occurred.

To account for his being on highway 65 and the lapse of time involved, Davis had told his employer and others that he had gone north on 65 to help start a car, which statement he subsequently retracted and said he had made it to keep from being fired because he had been doing something he had not been told to do.

The case as to Alice-Sidney Farms hinges upon the question: ''Was the appellant, Joe Nathan Davis, engaged in the business of the appellant, Alice-Sidney Farms, at the time of the accident?'' There is no showing that the Alice-Sidney Farms had any business which required Davis to go either upon highway 65 or to any point east thereof. That part of the excursion seems to have been purely a personal and social one initiated by and in the interest of the appellant, Joe Nathan Davis.

The law of *respondeat superior* is well settled.

''* * * the doctrine of *respondeat superior* * * * rests upon the proposition that, in doing the acts out of which the accident arose, the servant was representing the master at the time and engaged in his business. It is conceded that the doctrine cannot be invoked unless, at the time of the negligent act causing the injury, the servant was engaged in performing a service for the master or [an act] incidental thereto. It is generally stated by text writers and in judicial decisions that the test of the liability of the master for his servants [sic] acts is whether the latter was at the time acting within the scope of his employment. The phrase 'in the scope of his employment or authority,' when used relative to the acts of the servant, means while engaged in the service of his master or while about his master's business. It is not synonymous with 'during the period covered by his employment.'

* * * The very basis of the rule of *respondeat superior,* as applied to automobile accidents as well as to other cases, is that the driver of the car is acting for the owner and not for himself personally at the time of the

accident. When the servant steps outside of the master's business and enters upon the performance of some individual purpose of his own, he ceases to act as the servant of the owner, and the latter's responsibility for his act terminates." *Hunter* v. *First State Bank of Morrilton,* 181 Ark. 907, 28 S. W. 2d 712.

In *Page Lumber Company* v. *Carman,* 214 Ark. 784, 217 S. W. 2d 930, this court discussed the master's liability and said:

"In order to bind the master, * * * 'the act must be done not only while the servant is engaged in his master's service, but it must pertain to the particular duties of that employment.'

'In the more recent case of *Carter Truck Line* v. *Gibson,* 195 Ark. 994, 115 S. W. 2d 270, it is said: "The act of the servant for which the master is liable must pertain to something that is incident to the employment for which he is hired, and which it is his duty to perform or be for the benefit of his master. *Sweeden* v. *Atkinson Imp. Co.,* 93 Ark. 397, 125 S. W. 439, 27 L. R. A., N. S. 124. * * * And if the servant steps aside from the master's business to do an independent act of his own and not connected with his master's business, then the relation of master and servant is for such time, however short, suspended; and the servant while thus acting for a purpose exclusively his own, is a stranger to his master, for whose acts he is not liable. * * * If a servant completely turns aside from the master's business and pursues business entirely his own the master is not responsible.' *Lindley* v. *McKay,* 201 Ark. 675, 146 S. W. 2d 545.''

The case of *Healey* v. *Cockrill,* 133 Ark. 327, 202 S. W. 229, is a leading case on the matter of deviation and abandonment. In the *Healey* case the master had ordered the servant to bring the car around to her door. This entailed the servant driving the car around three sides of a block and parking the car at the master's door. But instead of this, the servant drove the car several blocks away to purchase cigarettes for himself and on

the return trip was involved in an accident. In this case we said:

"We do not think that the facts of the present case bring it within the rule of slight deviation from the employer's service, or a mere incidental departure from the service to mingle it with purposes of the servant's own, but that it is a case of complete abandonment or departure from the employer's business and a stepping aside wholly for the servant's own purpose. The distance traveled by the servant in going upon his own errand was not very great, but it was considerably out of proportion with the distance necessary to travel in obeying the instructions of his employer. In other words, the relative distance was too great to be called a slight deviation, and the departure from the line of duty was so complete that the connection with the employer's service was completely broken. In order to perform the employer's service it was unnecessary for the servant to leave the immediate proximity of the employer's premises. He did not even have to cross any of the streets, but his journey from the back of the premises to the front was merely to follow the same side of the street half way around the block. Instead of following that course, the servant left the premises entirely and went off on an errand of his own to purchase an article for his private use, and in order to make the trip to the store, was not mingling his it was necessary for him to travel the distance of six and one-half blocks in getting back to the front of his employer's residence. The servant, in leaving the premises in order to make that trip in observance of the traffic rules, own business with that of his employer, but he was stepping aside entirely from the employer's business to go on an errand of his own, and this is true even though he intended to dispose of the car, on his return, in accordance with the employer's direction."

In *Neville* v. *Adorono,* 123 Conn. 395, 195 A. 613, there is a discussion of deviation from and return to the scope of employment.

"In deciding whether an unauthorized deviation from the employment is so slight and not unusual as not to relieve the employer from liability, or of such a character as to constitute a temporary abandonment of the employment, 'the trier must take into account, not alone the mere fact of deviation, but its extent and nature relatively [sic] to time and place and circumstances, and all the other detailed facts which form a part of and truly characterize the deviation, including often the real intent and purpose of the servant in making it.' * * *

Only when the deviation is clearly of the one character or the other can its effect upon the employer's liability be determined as matter of law. In most cases it is a question of fact, depending upon the nature and extent of the deviation and all the attendant circumstances." [Citations omitted]

The testimony in this case is in no wise disputed that the employer, Alice-Sidney Farms, had no business that required its servant, Joe Nathan Davis, to go on highway 65 at all nor to go east of highway 65 and that Davis' action in so doing constituted a deviation and departure from his employment for which the employer is not responsible.

The accident occurred at a point north of where the employer had left Davis when Davis was instructed to take the tractor back to the farm. Hence, there could have been no resumption of his employment. We think that the time that elapsed between the departure from employment, when Davis, on his own, turned the tractor around and went east across highway 65, and the claimed resumption is a significant circumstance. We do not know how much time elapsed after Davis crossed highway 65 going east, but as a matter of common knowledge we know that time did elapse between Davis' departure from in front of the store to the point where he picked up his friends on the Stene Dunn farm. We know that time did elapse between the time he picked up his two friends at Dunn's and drove two miles north to the Locke farm where he stayed two or three minutes and

time certainly elapsed between the leaving of the Locke farm and the time when Davis arrived in front of the Oasis Cafe, the scene of the accident, and it was Davis' use of that time on his own business that placed him at the scene of the accident.

We think the finding of the Alabama Supreme Court in *Bell* v. *Martin,* 241 Ala. 182, 1 S. 2d 906, is especially pertinent.

"It is established in this jurisdiction that where there is an abandonment of the master's business for personal reasons of the servant or agent in question, the employment is suspended and the master is not liable for the negligence of such agent or servant during such suspended employment and during the time of his departure from the master's business. Each case must be ruled by its 'own peculiar' or particular facts, and when a servant has abandoned his employment by the master (*Moore-Handley Hardware Co.* v. *Williams,* 238 Ala. 189, 189 So. 757), *the mere fact that he is returning* thereto, does not of itself reinstate the servant, agent or agency in his master's employment and establish the engaging in the master's business so as to subject the master to liability and for damages resulting after the departure and before the return is accomplished as of fact."

That court also said:

"* * * where there has been an abandonment and the driver must return to the place of such abandonment before he can commence carrying out what he was hired to do, then to such extent the employment is suspended, *both on the outgoing and return trip.*"

The defendants requested instruction No. 15 as follows:

"You are instructed that under the proof in this case, as a matter of law, the defendant, Joe Nathan Davis, was not acting within the scope of his employment, and you are, therefore, instructed to find for the defendant, Alice-Sidney Farms, and against the plaintiff."

Under the proof in this case, the above instruction should have been given. Failure to give it was error and for that error this cause is reversed and dismissed as to Alice-Sidney Farms. The negligence of the appellant, Joe Nathan Davis, was properly submitted to the jury which found for the appellee against him. That verdict we do not disturb.

JOHNSON, J., dissents.

JIM JOHNSON, Associate Justice (Dissenting). I dissent to the majority opinion for the reason that in my view the principal question presented here is one of fact for the jury. I am convinced that the trial court correctly submitted to the jury the question of re-entry upon the purposes of the master by the servant. The Court's Instruction No. 3 is as follows:

"You are instructed that even though you should find that the defendant, Joe Nathan Davis, was on an errand for his employer and had, prior to the accident, deviated from the scope of his employment, that this fact is immaterial if you find from a preponderance of the evidence that at the time of the accident the Defendant, Joe Nathan Davis, had resumed the performances of his duties for the defendant, Alice-Sidney Farms, and if you so find from a preponderance of the evidence, then you will find that Joe Nathan Davis was acting within the scope of his employment at the time of the collision."

There can be no question but that appellant's servant was on a frolic of his own and had departed from the scope of his employment. However, there is ample evidence to show that somewhere in point of time or space appellant's servant intended to re-enter upon the master's business. There is testimony to support a conclusion that at some point in the deviation appellant's servant intended to return the tractor to its accustomed place. (That was what he was instructed to do.) The facts here show that appellant's servant returned to within less than 45 feet of the point where he had departed from the scope of his employment. His own testi-

mony is undisputed that his intent was to return the tractor in accordance with the instructions of his superior. He testified that he slowed the speed of the tractor for the purpose of making a turn onto the road at which point he had departed on his own business. While in this process of altering the speed of the tractor for the purpose of negotiating the turn, the fatal injury occurred. What was in the servant's mind? The servant and the Lord only knows! Surely a trial judge would not be expected to rule, as a matter of law, that the servant was not intent upon returning the tractor to its rightful place. Intent is a matter of proof. The strength or weakness of the proof may or may not allow a trial judge to rule, as a matter of law, that the servant was or was not intent upon fulfilling his mission for his master, however tardy he may be in doing so. Clearly, reasonable men could differ in the case at bar. Since reasonable men could differ, it is most unreasonable to expect a trial judge or this Court on appeal to substitute his or our evaluation of the facts by denying a jury review of those facts.

The majority here has placed too much stress upon this Court's ruling in *Healey* v. *Cockrill*, 133 Ark. 327, 202 S. W. 229. The *Cockrill* case is clearly distinguishable. There the distance, though not great, which was traveled by the servant in going upon his own errand was many times greater than the distance necessary to travel in obeying the instructions of his employer. Here the distance traveled by the servant in going upon his own errand was less than half the distance necessary to travel in obeying the instructions of his employer. The majority goes to great length to reiterate the well known rule that when a servant goes upon a frolic or detour of his own such departure from the course of the master's business terminates the relationship of master and servant and relieves the master of tort liability for acts and omissions of the servant during such frolic or detour. There can be no quarrel with this rule for it is sound and represents the great preponderance of case law in this country. But the question of re-entry by the servant

upon the purposes and business of his master has too long been ignored by this Court. And I take specific issue with the majority's reliance upon the minority holding that re-entry is not effectuated so as to reestablish tort liability upon the master until the servant has reached the exact point of departure. This rule is much too narrow and could open the door to collusive and even perjured testimony whereby judgment-proof servants might willingly lift the burden of liability from their more prosperous master and the master's sureties.

By the very nature of a master-servant relationship it is folly to expect a master to be in constant supervision of each act his servant is to do. When a master sends a servant to accomplish some purpose for the master he thereby incurs certain liabilities of a vicarious nature for the acts and omissions of the servant. If the servant departs from that purpose the master is relieved of liability. But the perplexing problem presented to the courts is to devise some means of determining the approximate point in time or space when the servant re-enters upon the purposes of the master and thereby reestablishes the vicarious liability of the master.

No two cases present the same set of facts. The facts in one case may be so clear as to allow the trial judge to rule, as a matter of law, that the servant had or had not re-entered upon the purpose of the master. Conversely, the facts in another case may be such that reasonable men could differ. There can be no doubt but the case at bar falls in the second category.

The Court attempted to define re-entry in *Cahill* v. *Bradford,* 172 Ark. 69, 287 S. W. 595, when it held that it was a question for the jury ". . . whether the servant was pursuing the general course necessary to accomplish the purposes involved in his master's business at the time the injury occurred."

The facts in the present case are undisputed that the servant was in fact in the process of re-entering the road at the exact spot from which he had departed when the collision occurred.

The question still remains: At what point in time or space does re-entry into the scope of employment occur?

In an effort to answer this difficult question, the American Law Institute's Restatement of the Law of Agency, 2d, § 237, set out this rule:

"A servant who has temporarily departed in space or time from the scope of employment does not re-enter it until he is again reasonably near the authorized space and time limits and is acting with the intention of serving his master's business."

Cases cited in the appendix point clearly to the better view that, as here, on close questions of fact, submission to the jury is proper. (See cases cited in Restatement of the Law, Agency 2d, Appendix, § 237.)

American Law Institute's Restatement position is clearly supported by other authoritative legal writers. Professors Harper and James in their learned three volume text "The Law of Torts", Vol. 2, § 26.8 p. 1386, say:

". . . The simplest case of detour is that of a driver who is employed to drive a truck to deliver his master's goods to a point 10 miles south of the store, but who drives the loaded truck a short block west of the prescribed direct route to get some cigarettes, intending to return forthwith to the performance of his duty. If he negligently injures plaintiff, during the deviation, the master is generally held liable.

"At the other extreme stands the case where the driver, having delivered the goods, proceeds to take a 50-mile drive further south to see his girl and on his way there injures plaintiff 25 miles south of where he delivered the goods. Here the master is not held.

"Between these extremes exist the greatest confusion and contrariety of opinion. Most courts and commentators agree that no clear line can be drawn although some of the earlier cases are marked by a striving for precise—and arbitrary—tests. *For the most part the tendency has been to recognize the importance of a num-*

*ber of factors, attaching to each a weight that varies with the circumstances—a process that is usually committed to the jury . . .''* (Emphasis supplied.)

Further, see Prosser on Torts, 2d Ed. § 63, p. 353, which states:

"Questions of fact of unusual difficulty arise in determining whether the servant's conduct is an entire departure from the master's business, or only a roundabout way of doing it—and likewise, the point at which the departure is terminated, and the servant may be said to have re-entered the employment. This is particularly true in the 'detour' cases, where the servant deviates from his route on a personal errand, and later returns to it. Various tests have been proposed. One makes the question turn primarily on the servant's motive in the deviation, saying that he is within his employment while he intends in part to serve his master, or as soon as he starts to return to his route. Another more generally accepted, looks to the foreseeability of such a deviation, and holds the employer liable only for torts occurring in a 'zone of risk' within which the servant might be expected to deviate. Under this view the servant does not re-enter the employment until he is reasonably near the authorized route. . . ."

35 Am. Jur. Master and Servant, § 558, p. 992.

". . . One of the controverted questions is whether an employee who has turned aside from his employer's business to accomplish some purpose of his own, and who, after accomplishing his purpose, returns to resume his duties, is, while so returning, engaged in the business of his employer and within the scope of his employment so as to render the employer liable for his tortious conduct. According to the rule of many courts, the employer may be held liable for the torts of his servant which are committed after the personal business of the latter has been concluded and while he is returning to the place where he departed from the designated course. Some courts hold that the mere fact that an employee using the car for his own business or pleasure

is returning to the master's garage or to his employment, when the injury occurs, does not alone constitute such a resumption of the master's business as will render the master liable for the injury. The truth is that no hard and fast rule on the subject either of space or time can be applied. It cannot be said of a servant in charge of his master's vehicle, who temporarily abandons his line of travel for a purpose of his own, that he again becomes a servant only when he reaches a point on his route which he necessarily would have passed had he obeyed his orders.''

It is my view that this Court should follow the great weight of authority in deciding the question of re-entry by the servant upon the purposes and business of his master. The better view, in my opinion, is that on close questions of fact the jury is the proper forum to decide whether a servant has re-entered upon the purposes and business of his master. The case at bar is a clear illustration of the injustice of the narrow view taken by the majority of this court.

For the reasons stated above, I respectfully dissent.