**J. B. KNOX, Special Administrator of the Estate of Tsianina Faye Knox, Deceased, Plaintiff,**

v.

**ST. PAUL FIRE & MARINE INSUR-ANCE COMPANY, Defendant.**

**No. LR–71–C–84.**

United States District Court,
E. D. Arkansas, W. D.

Feb. 8, 1972.

Robert L. Neighbors, Cockrill, Laser, McGehee, Sharp & Boswell, Little Rock, Ark., for plaintiff.

Alston Jennings, Wright, Lindsey, & Jennings, Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

EISELE, District Judge.

This suit was brought by the administrator of the estate of Faye Knox, employed at the time of her death by the University of Arkansas' Agricultural Extension Service as a nutrition aide. The duties of a nutrition aide involve consultation with low-income families in an attempt to teach methods of preparing better-balanced and more varied meals on a limited food budget. She was directed to establish contacts among the families of her assigned area, enroll them in any of a variety of programs offered by the Extension Service, meet with them in their homes, and, hopefully, eventually be able to leave them largely on their own. She had no set work hours and no real place of work. She was expected to cover a geographical area which may be thought of generally as northwest Lonoke County, Arkansas.

On the day of her death, Mrs. Knox left her home at Old Austin and drove the three and a half miles to the home of her mother-in-law, who had asked her to drive a nephew to Bald Knob to pick up his paycheck. One of Mrs. Knox's nutrition-service "clients", if that be the proper word, lived at Ward, located about five miles from Cabot, where her mother-in-law lived, on the direct route between Cabot and Bald Knob. Mrs. Knox drove toward Ward, but about 1.7 miles from there she was killed in an accident. With the exception of Bald Knob, all the places mentioned are located in the part of Lonoke County in which Mrs. Knox worked.

The nephew testified that there was no urgency in getting to Bald Knob to get the check. He had needed a ride

only because his own car was broken down. Though the point was contested, there was evidence from which the jury could have found that the client near Ward had been expecting Mrs. Knox to call on her about the time of the accident. It is about 42 miles from Ward to Bald Knob. Therefore, the jury could have believed that Mrs. Knox had planned to stop in Ward in connection with her job as a nutrition aide before taking her nephew to Bald Knob or, perhaps, that she intended to get off at Ward to visit her client, letting her nephew drive to Bald Knob for his check and pick her up on his return. It is undisputed that, had she left her home in Old Austin and driven the three miles directly to Ward, she would never have been at the point where the accident occurred.

The defendant has issued a policy of insurance to the University of Arkansas providing that certain death benefits would be payable to the estate of any employee who died while, in the words of the policy, "on the business of" the University of Arkansas.

Defendant has consistently taken the position that, as a matter of fact and as a matter of law, Mrs. Knox was not "on the business of" the University of Arkansas at the time of the accident. It moved for a directed verdict at the close of all the evidence, but the case was submitted to the jury. The instructions central to the issues at hand are as follows:

"Faye Knox was on the business of the University of Arkansas if she was engaged in the transaction of business which had been assigned to her by the University of Arkansas or if she was doing anything which may reasonably be said to have been contemplated as a part of her employment and was in furtherance of the interests of the University of Arkansas.

"You are instructed that, as a matter of law, when Mrs. Faye Knox went to the home of Mrs. Gladys Knox, she had gone aside from her employment and was not on the business of her employer. Therefore, the burden is upon the plaintiff to prove by a preponderance of the evidence that Mrs. Knox had returned to the business of her employer at the time of the accident.

"If Faye Knox abandoned the business of the University of Arkansas to perform an act or engage in an activity for her own exclusive purpose and not in furtherance of the interests of the University of Arkansas, that act or activity was not 'on the business of' the University of Arkansas.

"Stated otherwise, to recover on the insurance policy, the plaintiff must prove by a preponderance of the evidence that Mrs. Knox was on the business of the University of Arkansas at the time of the accident, but it is not necessary that she be solely and exclusively on the business of that employer. So, if you find from a preponderance of the evidence that Mrs. Knox was on the business of her employer at the time of the accident, you may find for the plaintiff even though you also find that she was, at that time, also on some other business, personal or otherwise."

The jury found for the plaintiff, and the defendant has moved for a judgment n. o. v.

In the course of briefing the motion there has been much discussion as to whether the phrase "on the business of the employer", in the context of this litigation, has the same meaning as "within the scope of employment", language used most commonly in those tort cases in which a plaintiff attempts to invoke the doctrine of *respondeat superior*. The quoted instructions include the Arkansas model instructions for use in such tort litigation, modified only by the substitution of the contract phrase concerning us here. They were requested by both parties, but after the post-trial motion was filed, plaintiff began to question their applicability to the present case, as well as that of rules of law interpreting

the phrase "within the scope of employment" developed in tort cases. While the matter is probably open to some dispute, the Court deems it unnecessary to decide the point now. Suffice it to say that it is the Court's opinion that the instruction given was a proper guide to the jury in its task of deciding on the applicability of defendant's insurance contract.

In support of its motion, defendant relies primarily on two Arkansas cases, Healey v. Cockrill, 133 Ark. 327, 202 S. W. 229 (1918), and Davis v. Kukar, 235 Ark. 139, 357 S.W.2d 275 (1962). Each involves a situation in which an employee was held to have so deviated from the course of his assigned duties that he was as a matter of law not acting in the scope of his employment at the time of an accident which resulted in litigation.

In Healey, a chauffeur was instructed to bring a car to his employer's front door, a distance of only a few hundred feet. Instead of going directly to the house, the chauffeur drove to a nearby drugstore to buy himself some cigarettes. This detour would have added about five city blocks to the distance driven. After stopping at the drugstore, and while on his way back toward his employer's house, the car was involved in an accident. The Arkansas Supreme Court held that he was not acting within the scope of his employment at the time of the accident since he had not yet reached a point which he would have passed if he had proceeded directly to the door of the house in the first place. It was acknowledged but held irrelevant that he fully intended to go straight from the drugstore to the front door of the house.

The rule was reaffirmed in Davis. There, after completing some work for his employer, an employee was told to drive a tractor back to the employer's farm. Instead, he drove the opposite direction on personal errands. The accident occurred while he was in the process of returning to the farm. At the time of the accident, he was apparently within about 45 feet of the point from which he had initially left when he disobeyed his instructions and went about his personal business. Again, since he had not actually reached that point, he was held not to have been acting in the scope of his employment.

The defendant is correct in asserting that Healey and Davis set forth a strict rule, one which makes conclusive a determination whether, as a matter of geography, the employee would have been at the place where the accident occurred had he never deviated from his employment. Yet they do not control the present case. There are two significant distinctions between their factual situations and this one which preclude the application of that rule.

The first is the specificity of the instructions given. Where the other two employees were told, "Bring the car to the front door", and, "Take the tractor back to the farm", no one said to Mrs. Knox, "Drive to Ward". Mrs. Knox was never required to be in a given place at a given time, except so far as she made appointments for herself. The Arkansas Court's strong reliance on geography in the two cases is based squarely on the fact that those two employees had specific directions from their employers to go from one geographical point to another. Mrs. Knox did not.

The second distinction is the nature of the duties of the employment itself. The employees in Healey and Davis, from all appearances, had little or no discretion as to the time and place of performing their tasks. Mrs. Knox, of course, had virtually complete control of when she went where in northwest Lonoke County to perform her duties. She did not even have regular working hours. In such a situation the instant at which an employee abandons his employer's business for his own or returns to it is not nearly so precisely determinable as it was in the cases under discussion.

Matters of abandonment and resumption of an employer's business are ordinarily questions of fact, and each case

must turn on its own particular facts. In *Davis* itself the Court quotes with approval two decisions reciting as much. Here, the question was submitted to the jury, under proper instruction, and the jury found Mrs. Knox to have resumed the business of the University of Arkansas. With the specific directions and other circumstances peculiar to *Healey* and *Davis* here absent, the defendant cannot make that question of fact into one of law.

Judgment for the plaintiff for death benefits, penalty, and attorney's fee will therefore be entered on the jury verdict. If the parties have been unable to agree after a reasonable time as to a reasonable attorney's fee, they should notify the Court and a time will be set for a brief hearing on that point.