WELLS FARGO & COMPANY EXPRESS *v.* ALEXANDER.

## Opinion delivered November 15, 1920.

1. MASTER AND SERVANT—LIABILITY FOR SERVANT'S WRONGFUL ACTS.— The test of a master's liability for his servant's acts is not whether they were done during the existence of the servant's employment, but whether they were committed in the prosecution of the master's business, and pertain to the particular duties of the servant's employment.

2. MASTER AND SERVANT—LIABILITY FOR ASSAULT BY SERVANT.— Where the agent of an express company without authority ejected plaintiff by force from a room being constructed for the express company, but which had not been completed or delivered to the express company, the company will not be liable.

Appeal from Ouachita Circuit Court; *George R. Haynie,* Judge; reversed.

*Mehaffy, Do^ham & Mehaffy,* for appellant.

The court's instructions were erroneous as given, and it was error to refuse No. 7 for appellant.

According to the undisputed evidence, it does not appear that O'Neal was acting in the line of his duty as agent when he made the assault. The court should have directed a verdict for appellant under the testimony. 93 Ark. 397; 75 *Id.* 579; 77 *Id.* 606. The master is not liable for the acts of his servant that are beyond the scope of his employment. Cooley on Torts, 627; 33 Neb. 582; 83 Ark. 193; 4 Labatt on Master and Servant, § 1466; 113 Pac. 386; 111 Ark. 208; 26 Cyc. 1527.

The act must not only be done while the servant is engaged in his master's service, but it must pertain to the particular act of that employment. 40 Ark. 323; 111 *Id.* 208. See, also, 18 So. Rep. 292; 42 Ark. 542; Cooley on Torts, p. 538. These authorities show that O'Neal acted beyond the scope of his authority and employment and appellants are not bound. None of the cases cited by appellee are applicable here.

*W. R. Duffie* and *Powell & Smead,* for appellee.

1. The evidence shows that O'Neal was the agent of the express company, and it was part of his duty to

protect it from loss; he was under bond for the faithful performance of his duties. The instructions were really more favorable to appellant than they had a right to ask. The testimony is conclusive that O'Neal was the agent of the express company and that he was acting for his principal and within the scope of his apparent or real agency, and the principal is liable for his tort, whether authorized or not. 75 Ark. 579; 96 *Id.* 358; 62 *Id.* 109; 42 *Id.* 542.

2. If the instructions assumed that O'Neal was the agent of the express company, the assumption was clearly warranted by the evidence, and there were no errors in them, given or refused. 90 Ark. 524; 91 *Id.* 97. See, also, 131 Ark. 411; 132 *Id.* 282; 75 *Id.* 579; 62 *Id.* 109; 96 *Id.* 258; 75 *Id.* 579.

McCULLOCH, C. J. This is an action instituted by appellee to recover damages arising from an assault committed by one O'Neal, alleged to be the agent of the two express companies who were defendants below, and who have prosecuted this appeal from the judgment rendered against them.

The express companies occupied, as a storage room and office, the baggage room of the St. Louis, Iron Mountain & Southern Railway Company at Malvern, Arkansas. The railway company erected a new passenger station at Malvern and prepared in the building a room for the use of the express companies. On February 23, 1916, the day the assault on appellee was made by O'Neal, the building had been completed except some inside finishing (carpentry work and painting) in the room to be occupied by the express companies. Neither the railway company nor the express companies had moved in, but were using the old station a short distance away. The proof adduced at the trial tended to show, however, that express matter, a package or crate of bananas and a box of vegetables, had been put into this room by O'Neal. The companies did not take possession of the new building until March 1, 1916. O'Neal had a key to the new ex-

press room which he turned over to the carpenter and painter in the morning, and it was returned to him at night. The workmen were employed by Nunn, who contracted to construct the building; and O'Neal received the key from a carpenter working under Nunn. Jones was the joint agent of the railway company and the express companies, and he employed O'Neal as helper or clerk. His duties, with reference to the express business, were to receive and deliver express matter and to keep the books. While the carpenters were at work in the new express room, appellee was invited into the room by them to join a party engaged in drinking whiskey, and appellee became intoxicated and went to sleep on a tool box. Others became intoxicated also and left the room in that condition. One of the workmen went out of the room to get a cup of coffee at a nearby restaurant, and as he returned O'Neal met him and demanded the key to the door. On receiving the key, O'Neal went into the room where appellee was asleep and assaulted him. The testimony tends to show that the assault was not provoked by appellee, and that O'Neal used excessive force in ejecting appellee from the room. The jury returned a verdict in appellee's favor and assessed damages in the sum of $1,000, which assessment was fully sustained by the testimony, if appellee is entitled to recover at all.

Numerous exceptions were saved to the rulings of the court in giving and refusing instructions, but we pass from them to a discussion of the vital question urged by counsel for appellants, as grounds for reversal, whether or not the testimony is sufficient to sustain the verdict. It is contended that, according to the undisputed evidence, it does not appear that O'Neal was acting in the line of his duty as agent of appellants when he made the assault on appellee.

This court has clearly stated the rules of law applicable to the facts of this case.

In *St. L., I. M. & S. Ry. Co.* v. *Grant*, 75 Ark. 589, we said that, if "the agent was acting for his principal

and in pursuance of his real or apparent agency at the time the tort was committed, then it may be said that he was acting in the course of his employment, and the principal will be liable for such tort, whether authorized or not."

And in the case of *Peter Anderson & Co.* v. *Diaz*, 77 Ark. 606, we quoted with approval the following rule announced by the Supreme Court of Nebraska in the case of *Davis* v. *Haughteller*, 33 Neb. 582:

"The test of the master's liability is not whether a given act was done during the existence of the servant's employment, but whether it was committed in the prosecution of the master's business."

A similar rule was announced by this court in the case of *Little Rock & Fort Smith Rd. Co.* v. *Miles*, 40 Ark. 323, where it was said:

"The act must be done not only while the servant is engaged in his master's service, but it must pertain to the particular act of that employment."

These principles were announced in other decisions of this court. *St. L. & S. F. Rd. Co.* v. *Wyatt*, 84 Ark. 193; *Sweeden* v. *Atkinson Imp. Co.*, 93 Ark. 397; *Robinson* v. *St. L., I. M. & S. Ry. Co.*, 111 Ark. 208; *Arkansas Natural Gas Co.* v. *Lee*, 115 Ark. 288; *Chicago Mill & Lumber Co.* v. *Bryeans*, 132 Ark. 282.

Tested by these principles, we do not think that, under the facts of this case, appellants are responsible for the tort committed by O'Neal. The premises where the assault was committed had not been delivered to appellants, and O'Neal had no authority, either real or apparent, to take possession for his principals. He was acting entirely outside of the line of his employment in using the premises for any purpose, and was not acting for his principals in attempting to eject appellee from the premises. The delegation to him of authority to handle express matter extended only to the premises selected by the principals—not to the selection of other premises on which to conduct the business; and the ques-

tion of liability is not affected by the fact that the premises had been selected by the principals for future use. It is the same as if the agent had attempted to use, for the business of his principals, premises wholly unknown to the latter.

The testimony does not show that O'Neal made the assault in protecting the packages of express in the room, but even if such proof appeared in the record it would not affect the question of appellant's liability, for O'Neal acted beyond the scope of his authority in putting the packages in the room, and this unauthorized act did not extend his authority over the premises so as to make his principals liable for his tort committed there. The testimony shows that O'Neal made the assault in an attempt to eject appellee from the room because he and his associates were befouling the room in their drunken orgy, and he had no authority from his principals, either real or apparent, to do anything at all with reference to the room or in it. There is nothing in our previous decisions militating against the conclusion we have reached.

The Grant case, *supra*, which is strongly relied on to sustain the liability of appellants, was one where the tort was committed by the agent at a place not on the premises of the principal, but there was proof of express authority to proceed in the prosecution of the particular business of the principal at any place, and the majority of the court sustained the liability on the ground that there was sufficient proof of authority. That case differs materially from this one, though controlled by the same principles.

The case of *Peter Anderson & Co.* v. *Diaz, supra,* was one where the assault was committed by the agent on the premises of the principal but not within the line of his duty, and we held, announcing and applying the rules of law before stated, that the principal was not liable for the tort of the agent. Under the facts of the present case, there was no real authority from the principals for the agent to do the unlawful act which he did

commit, either at that place or elsewhere, but if he had in fact been on the premises of the principals and attempting to protect the premises or the property situated there, he would have had apparent authority, and the principals would be responsible for his conduct. However, since O'Neal was not on the premises of his principals and had no authority, either real or apparent, to act for them at any place other than that selected by them, they are not responsible.

The judgment is therefore reversed and the cause is remanded for a new trial.

HART, J., (dissenting). Mr. Justice HUMPHREYS and the writer agree to the law as decided, but think that in its application to the facts of the present case, there was a question for the jury as to the authority of the express messenger to eject appellee.

