LINDLEY v. McKAY.

4-6155                                    146 S. W. 2d 545

Opinion delivered January 13, 1941.

*Rex W. Perkins,* for appellants.

*J. E. Yates* and *Partain & Agee,* for appellees.

HOLT, J. Appellees, five in number, brought suit against appellant, Lester Lindley, to recover damages alleged to have been caused by the negligence of appellant's employee in starting a fire on their premises. The separate causes were consolidated for trial. Verdicts were returned for appellees ranging from $200 down to $25, or for a total amount of $700. From judgments entered on these verdicts, this appeal comes.

The complaint alleged that Britt Pierce, an employee of appellant, Lindley, while acting in the scope of his employment, carelessly and negligently started the fire which caused the damage. All allegations in the complaint were denied by appellant.

It is first contended by appellant that the evidence was not sufficient to submit the case to the jury.

On this issue, the record reflects that appellant, Lindley, was operating a truck line through Arkansas along and over paved highway No. 64 in Franklin county, and that in the conduct of his business some of his trucks were driven by lease operators and some by appellant's employees.

September 26, 1939, Britt Pierce, appellant's employee, while driving one of appellant's trucks from Memphis, Tennessee, to Kansas City, Missouri, over highway No. 64, in Arkansas, picked up a "hitch hiker,"

Ace Garrett, in Little Rock, who requested a ride to Springdale, Arkansas. As this truck approached a point in Franklin county called "Fisher Hill," a truck approached from the opposite direction driven by Reece Wilson, one of appellant's lease operators, and an acquaintance of Pierce and Garrett. The two trucks drove off the pavement a few feet and stopped. According to the record, this stop was made to give Ace Garrett, the "hitch hiker," an opportunity to endeavor to secure a position from Reece Wilson. The stop was made around the noon hour and lasted some 30 or 40 minutes. After the three men had alighted from the trucks, Wilson produced a watermelon, which they proceeded to consume, and while thus engaged in eating the watermelon, one of the three cast aside a lighted cigarette which started a fire causing the damages alleged.

As to who started the fire, appellee, Ed L. McKay, testified that he saw the trucks stop and observed the name "Lindley" on them. One of the men wore a brown suit with the name "Lindley" on it and another had on gray striped overalls without any name on them. He reached the trucks shortly after the fire blazed up and the man in the brown suit said, "We, or I, threw down the cigarette." They had been eating a watermelon. He did not know who threw down the cigarette.

Another appellee, Isaac Mayner, who reached the scene about the same time that McKay arrived, corroborates McKay's testimony.

There was some other testimony on behalf of appellees of probative value. On behalf of appellant, Ace Garrett testified that he threw down the cigarette that started the fire. In this statement he is corroborated by Brit Pierce and Wilson. We cannot say, however, when all the testimony is considered, that as a matter of law, there was no substantial evidence to support the jury's finding on this issue.

It is, however, earnestly insisted by appellant that even though we should conclude the evidence sufficient to establish that appellant's employee, Britt Pierce, actually started the fire, there can be no recovery for

the reason that, at the time of starting the fire, Britt Pierce was not in the performance of the business of his employer, appellant, Lindley, but had stepped aside from his employment.

We think this contention of appellant must be sustained. The undisputed proof in this case discloses that the purpose for which these trucks stopped on the side of the road was to afford Ace Garrett an opportunity to contact Reece Wilson in an effort to secure employment. After stopping for this purpose, Wilson produced a watermelon which the three men proceeded to consume. On the record here, no act was performed during this stop that could be deemed in the furtherance of the master's business or done by appellant's employee, Britt Pierce, while in performance of any duty required of him. The stop was made without appellant's knowledge or consent and solely, we think, for the accommodation of Ace Garrett.

In a case of this kind the test is not whether the negligent act was committed while the servant was in the employ of the master, but whether it was committed at a time when the servant was performing an act in furtherance of the master's business or in line with the servant's duty.

The rule has been stated as early as the 40th Arkansas Reports in the case of *Little Rock & Fort Smith Ry. Co.* v. *Miles,* 40 Ark. 298, 48 Am. Rep. 10. There this court said: "The rule is firmly established that the master is civilly liable for the tortious acts of his servant whether of omission or commission, and whether negligent, fraudulent, or deceitful, when done in the line of his employment, even though the master did not authorize or know of such acts, or may have disapproved of or forbidden them. . . . But the act must be done, not only while the servant is engaged in his master's service, but it must pertain to the particular duties of that employment."

In the more recent case of *Carter Truck Line* v. *Gibson,* 195 Ark. 994, 115 S. W. 2d 270, it is said: "The act of the servant for which the master is liable

must pertain to something that is incident to the employment for which he is hired, and which it is his duty to perform, or be for the benefit of his master. *Sweeden* v. *Atkinson Imp. Co.,* 93 Ark. 397, 125 S. W. 439, 27 L. R. A., N. S., 124. . . .

"And if the servant steps aside from the master's business to do an independent act of his own and not connected with his master's business, then the relation of master and servant is for such time, however short, suspended; and the servant, while thus acting for a purpose exclusively his own, is a stranger to his master, for whose acts he is not liable. . . . If a servant completely turns aside from the master's business and pursues business entirely his own the master is not responsible."

And again in *Hunter* v. *First State Bank of Morrilton,* 181 Ark. 907, 28 S. W. 2d 712, this court said: "It is generally stated by text writers and in judicial decision that the test of the liability of the master for his servant's acts is whether the latter was at the time acting within the scope of his employment. The phrase 'in the scope of his employment or authority,' when used relative to the acts of the servant, means while engaged in the service of his master or while about his master's business. It is not synonymous with 'during the period covered by his employment'."

Appellee calls to our attention the recent case of *Vincennes Steel Corporation* v. *Gibson,* 194 Ark. 58, 106 S. W. 2d 173, and insists that it controls here. We think, however, that there is a marked distinction between that case and the instant case. It must be apparent that all of these cases must turn largely upon the particular facts in each. In the Vincennes case the facts were, quoting from the opinion, "although the fire was set out by one of the employee's smoking, there is no evidence that he, at any time, departed from the business of the master."

In the instant case, however, as indicated, we think there was a clear departure on the part of the employee, Britt Pierce, from the business in which he was engaged, and, therefore, the Vincennes case does not control.

For the error indicated, the judgment is reversed, and since the cause seems to have been fully developed, it will be dismissed.

HUMPHREYS and MEHAFFY, JJ., dissent.