PAGE LUMBER COMPANY *v.* CARMAN.

4-8770                                           217 S. W. 2d 930

Opinion delivered March 7, 1949.

*W. W. Shepherd,* for appellant.

*J. Fred Jones,* for appellee.

HOLT, J.   September 20, 1947, a Ford automobile of appellees, residents of Louisville, Kentucky, collided with

a Dodge trailer truck on Fair Park Blvd., in Little Rock. The truck belonged to appellant, Page Lumber Company, a partnership composed of J. O., Emmett and Homer Page, and was being driven at the time by Charles Page, a nephew of J. O. Page. Appellees brought the present suit to recover for personal injuries and damages to their automobile, alleged to have been caused by the negligence of appellant's employee, Charles Page, while operating appellant's truck in the scope of his employment.

Appellants answered with a general denial. A jury trial resulted in a verdict for appellees against both the Page Lumber Company and Charles Page, the truck driver. From the judgment is this appeal.

For reversal, appellants say: ''The only question presented by this appeal is whether or not the evidence is sufficient to support the verdict against the Page Lumber Company.''

Appellant, Page Lumber Company, was composed of J. O., Emmett and Homer Page. Charles Page, a nephew of J. O. Page, was not a member of this partnership. At the time of the collision of the cars in question there was substantial evidence which warranted the jury's finding that Charles Page was an employee of the Page Lumber Company and the collision and damages complained of were the result of his negligence and the judgment against him must be affirmed. It does not follow, however, that the judgment against the Page Lumber Company should be permitted to stand.

While, as we said in *Brooks* v. *Bale Chevrolet Company, Inc.,* 198 Ark. 17, 127 S. W. 2d 135, ''it is true that if an automobile causing an accident belongs to the defendant and is being operated at the time of the accident by one of the regular employees of the defendant, there is reasonable inference that at such time the employee was acting within the scope of his employment and in furtherance of the master's business,'' however, ''this is only a *prima facie* presumption or inference,''—and may be rebutted, and in *Ford & Son Sanitary Company* v.

*Ransom,* 213 Ark. 390, 210 S. W. 2d 508, we said: "The defendant company, to avoid liability, was then obliged to introduce substantial proof directed to the negation of scope of employment. When the defendant company introduced such proof, the presumption (arising from ownership and driving of the vehicle) had served its purpose, and disappeared, so that if—independent of such presumption—there was no evidence to dispute the defendant's proof, and if such proof contained no substantial contradictions in itself, then there would have been no evidence to take the case to the jury on the 'scope of employment' theory."

In order to bind the master, the Page Lumber Company here, "the act must be done not only while the servant is engaged in his master's service, but it must pertain to the particular duties of that employment.'

"In the more recent case of *Carter Truck Line* v. *Gibson,* 195 Ark. 994, 115 S. W. 2d 270, it is said: 'The act of the servant for which the master is liable must pertain to something that is incident to the employment for which he is hired, and which it is his duty to perform, or be for the benefit of his master. *Sweeden* v. *Atkinson Imp. Co.,* 93 Ark. 397, 125 S. W. 439, 27 L. R. A., N. S. 124. . . . And if the servant steps aside from the master's business to do an independent act of his own and not connected with his master's business, then the relation of master and servant is for such time, however short, suspended; and the servant while thus acting for a purpose exclusively his own, is a stranger to his master, for whose acts he is not liable. . . . If a servant completely turns aside from the master's business and pursues business entirely his own the master is not responsible.' " *Lindley* v. *McKay,* 201 Ark. 675, 146 S. W. 2d 545.

In one of our leading cases, *Hunter* v. *First State Bank of Morrilton,* 181 Ark. 907, 28 S. W. 2d 712, on the test of a master's liability in circumstances such as are presented here, this court said: "Again, in *Wells Fargo & Co. Express* v. *Alexander,* 146 Ark. 104, 225 S. W. 597, it was held that the test of a master's liability for his

servant's tortious acts is not whether they were done during the existence of the servant's employment, but whether they were committed in the prosecution of the master's business, and pertained to the particular duties of the servant's employment. . . .

"In a case note to 32 A. L. R. at page 1398, it is said that it is the well-established general rule that an owner of an automobile is not liable for an injury or for damage resulting from the negligent operation of his car by his employee while the latter is using it for his own purposes without the owner's permission or consent, since, to hold the latter liable, the relation of master and servant must exist at the time, and the act must be within the scope of the servant's authority. Among the numerous cases cited is *Healey* v. *Cockrill,* 133 Ark. 327, 202 S. W. 229, L. R. A. 1918D, 115."

Stating the testimony in its most favorable light in support of appellees, it was to the following effect: The collision occurred about 11 o'clock, Saturday morning, September 20, 1947. The Page Lumber Company, which operated a saw mill, was not operating on that day. Charles Page went to the mill on that morning to procure his pay. He testified that while at the mill, he took the truck in question without the knowledge or permission of any member of the Page Lumber Company, to use it in transporting groceries from a store some ten blocks from his residence; that it was raining at the time. On his way home with the truck the collision in question occurred. In response to the following comment of appellee, Mrs. Christine Carman: "Look what you have done to us," Charles Page said: "I am sorry, lady, I lost control of my truck." She then asked the truck driver what he intended to do about it and Charles Page said: "I will have to call my boss." Charles Page testified that he did phone his boss and reported the accident. The truck was empty at the time.

J. O. Page testified: (Appellees' brief) "That he, his son, Emmett, and his brother, Homer Page, owned the Page Lumber Company; that the truck involved in the collision on September 20, 1947, was his truck; that he

did not know it was gone from the mill until Charley Page called him and said he had had an accident on Fair Park Boulevard''; that Charles Page took the truck without his knowledge or consent; ''that Charley Page is his nephew; that Charley Page had worked for the Page Lumber Company as driver of a log truck, but was not working on the day of the accident; that he didn't remember whether they worked Friday or Thursday; that he doesn't know whether the truck involved in the collision was one regularly assigned to Charley Page or not; that Emmett looked after that; that he, J. O. Page, takes care of the saw mill and sales end of it and Emmett looks after the woods and trucks; that he, J. O. Page, wouldn't know one truck from another to tell the truth about it.'' He further testified: ''Q. Did you see this automobile? A. Went to the place and saw the condition of everything and I saw it wasn't my fault.''

Emmett Page testified that Charles Page was employed as a truck driver.

After a careful review of all the evidence, we have reached the conclusion that there is no substantial evidence in this record, when considered in its most favorable light, and with every reasonable inference deducible therefrom, in favor of appellees, to support a verdict and judgment in their favor under the governing rules set out *supra*.

While, as we have indicated, there was substantial evidence of Charles Page's negligence and that he was an employee of the Page Lumber Company at the time of the collision, we find no evidence that he was about his master's business, or in the course of his employment, at the time.

The trial court therefore erred in denying appellant's request for an instructed verdict in favor of the Page Lumber Company at the close of all the testimony.

The judgment against the Page Lumber Company is reversed, and since the cause appears to have been fully developed, it is dismissed.

The judgment against Charles Page is affirmed.