## CAPITAL TRANSP. CO. v. ARMOUR & CO.
### No. 14649.

United States Court of Appeals
Eighth Circuit.

Dec. 23, 1952.

Bruce T. Bullion, Little Rock, Ark. (Bailey & Warren and Guy Amsler, Jr., Little Rock, Ark., on the brief), for appellant.

Alston Jennings, Little Rock, Ark. (Wright, Harrison, Lindsey & Upton, Little Rock, Ark., on the brief), for appellee.

Before SANBORN, JOHNSEN and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

The appellant, Capital Transportation Company, a Delaware corporation, brought this action in an Arkansas State court against Armour & Co., an Illinois corporation and its truck driver employee Brandon, a citizen of Texas, to recover for the damage to one of its trolley buses sustained in a collision with one of Armour & Co.'s trucks driven by Brandon. The action was removed to the Federal District Court because of diversity of citizenship.

The collision occurred in Little Rock, Arkansas, shortly after midnight on January 24, 1951. The District Court directed

a verdict for Armour & Co. on the ground that at the time of the collision its employee, Brandon, was not acting within the scope of his employment. Assigning this ruling as error, the Capital Transportation Company has appealed from the judgment entered on the directed verdict. This assignment presents the sole issue in the case.

The facts are undisputed. The only evidence bearing on the point at issue is the testimony of Brandon, a witness for appellant. Armour & Co., through one of its wholly owned subsidiaries, maintains a place of business at Texarkana, Texas, for distribution of its meat products. Brandon was employed as a driver of one of the trucks used in this business. One of the routes driven by Brandon was from Texarkana to Little Rock and return, a trip which usually occupied two days. On these trips there was no set time for Brandon to leave Texarkana nor for his arrival at Little Rock. He left Texarkana whenever his truck had been loaded with shipments of meat for delivery to Little Rock customers and to customers between Texarkana and Little Rock. If on any trip he reached Little Rock in the afternoon, he made such deliveries as possible to consignees whose places of business were open. Thereafter, he parked his truck at the Ritz Motel where he occupied a room over night. The next day he completed his deliveries in Little Rock and returned to Texarkana. He testified that he was assigned a truck at Texarkana, given a load of meat and told to proceed to Little Rock and deliver the meat to the customers to which it was consigned, and then return to Texarkana. He had no other or more definite instructions. He kept his own time and reported it on his return to Texarkana. He ended his day's work when he registered at the Ritz Motel.

On the day before the accident Brandon made one delivery of meat between Texarkana and Little Rock where he arrived in time to register at the Ritz Motel at 7:30 P.M. He had no deliveries to make at Little Rock because the places of business of the consignees of the meat were closed. Thereafter, he was on his own and could do anything he wanted to do. He had never been instructed by Armour & Co. not to use the truck after he made his deliveries. Armour & Co. probably did not know that he occasionally drove the truck while in Little Rock after he had completed his deliveries. His employers never asked him about this and he saw no use in telling them. On his trips he was not required to report to Armour & Co.'s plant at Little Rock. From the time he left Texarkana until he returned, the truck and its cargo remained in his possession and under his control.

On the night of his accident Brandon left the Ritz Motel some time after 7:30, driving his employer's truck to North Little Rock to visit relatives. This was the sole purpose of his trip and Armour & Co. had no interest in it. He was not carrying on any business for Armour & Co. on this trip and did not intend to do so. He was on his own time and was free to do as he pleased. On the return trip from North Little Rock to the Ritz Motel his truck collided with the bus of the Capital Transportation Company.

On this evidence the District Court was clearly correct in directing a verdict for Armour & Co. The case is controlled by the law of Arkansas. Both parties rely on the case of Healey v. Cockrill, 133 Ark. 327, 202 S.W. 229, 230, L.R.A.1918D, 115, a leading case on the question at issue. In Healey v. Cockrill, defendant directed her chauffeur to bring her automobile from the garage in the rear of her premises to the front door of her residence, a distance of about one city block. The chauffeur without the knowledge of his employer, after taking the car out of the garage, went on a trip to a drugstore to buy cigarettes. Returning from the trip to the drugstore a collision occurred which resulted in a suit against the owner of the car, in which plaintiff obtained a judgment on a jury verdict. The Arkansas Supreme Court reversed on the authority of its earlier opinions on the ground that at the time of the accident the chauffeur was not engaged with-

724

in the scope of his employment. The court said that to be within the scope of a servant's employment "the act must be done not only while the servant is engaged in his master's service, but it must pertain to the particular duties of that employment. * * * The mere fact that he [the servant] was in the service generally of the master or that the servant was in possession of facilities afforded by the master in the use of which the injury was done would not make the act attributable to the master. The act must have been done in the execution of the service for which he was engaged. And if the servant steps aside from the master's business to do an independent act of his own and not connected with his master's business, then the relation of master and servant is for such time, however short, suspended; and the servant, while thus acting for a purpose exclusively his own, is a stranger to his master * * *."

While in later cases the Arkansas court has adopted the rule that proof that a defendant's automobile involved in a collision was at the time driven by one of defendant's employees raises a presumption that the employee was then acting within the scope of his employment, it has held that the presumption is rebuttable and disappears in the face of evidence showing that at the time of the accident the employee was engaged on an enterprise of his own. The rule of Healey v. Cockrill that in order to be within the scope of his employment a servant's act must be done while the servant is engaged in the master's service and must pertain to the particular duties of that employment has never been modified, but has been repeated in numerous later decisions of the Arkansas Supreme Court. Hunter v. First State Bank of Morrilton, 181 Ark. 907, 28 S.W.2d 712; Brooks v. Bale Chevrolet Co., Inc., 198 Ark. 17, 127 S.W.2d 135; Phillips Motor Co. v. Price, 204 Ark. 827, 165 S.W. 2d 251; Fooks v. Williams, 205 Ark. 119, 168 S.W.2d 193; Page Lumber Co. v. Carman, 214 Ark. 784, 217 S.W.2d 930.

The judgment of the District Court is affirmed.