UNITED TRANSPORT INC. *v.* WILSON.

5-1522                                    312 S. W. 2d 191

Opinion delivered April 14, 1958.

*William H. Arnold III* and *Arnold & Arnold,* for appellant.

*Shaver, Tackett & Jones,* for appellee.

PAUL WARD, Associate Justice. The question is: Was appellant's employee, a truck driver, acting within the scope of his employment when he injured appellee? Over appellant's objections, the question was submitted to a jury which gave appellee $1,250 actual damages and $500 exemplary damages.

We agree with appellant that the record contains no substantial evidence to support the above verdict and the judgment of the Court.

On December 31, 1957 Ernest Eugene Wilson, the estranged husband of appellee, was driving appellant's truck from Memphis through Texarkana, enroute to Tulsa, carrying a load of automobiles, when he was contacted by appellee, his estranged wife. The two effected a temporary reconciliation and spent the night together. It was agreed that appellee would meet Ernest on his way back from Tulsa and return to Memphis (where they had formerly lived) with him, in convoy, driving her own car. Either because appellee left Ernest a note,

as claimed by him, or because of a pre-arranged plan, as stated by appellee, Ernest went by the home of appellee's parents near Ogden (a short distance from Texarkana) about 2:30 A. M. on the morning of January 3, 1958. Appellee was at the home of her parents, and, supposedly, they were to get together there and proceed on to Memphis. What took place there determines the issue in this case.

Appellee's version of the difficulty that followed, the cause of her injury, and the preceding circumstance is as follows: We were separated, and he was under a peace bond. I am in the process of divorcing him. It was dangerous for me to stay with him — he beat me up lots of times. He said he would be in about 11 o'clock the night of the 2nd, but he wasn't in until about 3 o'clock in the morning of the 3rd. We were to make the trip back to Memphis. When he arrived I said "I have the car packed but I am not ready. I think we should have a talk." He said, "get in here. It's warm in here," meaning the cab of the truck. The motor was running. I told him I thought we should have a talk before I went back with him — we were having so much trouble. We started talking, and I didn't believe I would leave. He said I shouldn't go back to Memphis if I didn't go with him. Then he cursed me, and I told him I wasn't going to leave with him. We quarreled about property. I said I wouldn't give him anything, and he wouldn't give me the keys to the house in Memphis. We only discussed our personal affairs — matters strictly between the two of us. I finally got mad. He wanted me to get out. He said "get the hell out; I'm going." He didn't give me time. He pushed me and I fell. He let his foot off the clutch. The truck moved and I fell backwards. At the same time he shoved me he let off the clutch. I was injured, and stayed in the hospital until the doctor said I would be all right.

It clearly appears from the above factual statement, we think, that Ernest Eugene Wilson was not acting within the scope of his employment, as a truck driver for appellant, at the time appellee was injured, or dur-

ing the events transpiring immediately prior thereto. We cannot escape the conclusion that Ernest was in no manner engaged in anything pertaining to his master's business. The business in which he and his estranged wife were engaged at the time can hardly be described more clearly than was done by appellee herself. She said they only discussed personal relationship matters strictly between themselves. According to appellee's own account her injury was the result of a personal quarrel and the willful acts of her husband. By no stretch of the imagination can we see how any of these acts tended in any way to promote the interest of appellant. The mere fact that Ernest was, at the time, an employee of appellant is not decisive of the question in favor of appellee. The acts of Ernest which caused the injury complained of must have been in the discharge of a duty he owed his master before appellant here would be responsible. Many expressions from the opinions of this court sustain these asserted rules.

It was held that the negligent acts of an elevator operator were not within the scope of his employment in *Sweeden* v. *Atkinson Improvement Co.,* 93 Ark. 397, 125 S. W. 439. In reaching this conclusion the court among other things said:

"The act of the servant for which the master is liable must pertain to something that is incident to the employment for which he is hired, and which it is his duty to perform, or be for the benefit of the master. It is therefore necessary to see in each particular case what was the object, purpose and end of the employment and what was the object and purpose of the servant in doing the act complained of. The mere fact that he was in the service generally of the master . . . would not make the act attributable to the master. The act must have been done in the execution of the service for which he was engaged. And if the servant steps aside from the master's business to do an independent act of his own and not connected with his master's business, then the relation of master and servant is for such time, however short, suspended; and the servant, while thus acting for

a purpose exclusively his own, is a stranger to his master for whose acts he is not liable.''

We find this expression in *American Railway Express Co.* v. *Davis,* 152 Ark. 258, 238 S. W. 50:

"We have frequently announced and steadily adhered to the rule that 'the test of liability of a master for a tort committed by a servant is whether the act complained of was done in the prosecution of the master's business — not whether it was done during the existence of the servant's employment.' "

In *American Railway Express Company* v. *Mackley,* 148 Ark. 227, 230 S. W. 598, the court approved this rule:

" 'Where a servant acts without reference to the service for which he is employed, and not for the purpose of performing the work of the employer, but to effect some independent purpose of his own, the master is not responsible for either the acts or omissions of the servant.' "

Many other cases announcing the same rules in similar language could be cited. Some of them are: *Wells Fargo & Company Express* v. *Alexander,* 146 Ark. 104, 225 S. W. 597; *Chicago Mill & Lumber Company* v. *Bryeans,* 137 Ark. 341, 209 S. W. 69; *Pickens* v. *Westbrook,* 191 Ark. 156, 83 S. W. 2d 830; *C. J. Horner Company* v. *Holland,* 207 Ark. 345, 180 S. W. 2d 524; *Lindley* v. *McKay,* 201 Ark. 675, 146 S. W. 2d 545; *Page Lumber Company* v. *Carman,* 214 Ark. 784, 217 S. W. 2d 930, and; *Capital Transportation Company* v. *Armour & Co.* (Ark.) 200 F. 2d 722. In the *Carman* case, *supra,* the court said, quoting, that, "If a servant completely turns aside from the master's business and pursues business entirely his own the master is not responsible." As stated in the *Mackley* case, *supra,* the rules of law governing the liability of a master in this kind of case have been made plain, but the difficulty in most cases is in determining whether or not the servant has stepped aside from the employment. We do not find this difficulty here.

Considering the facts of this case in the light most favorable to appellee and applying the rules above an-

nounced, the only reasonable conclusion we can reach is that Ernest Eugene Wilson was not acting within the scope of his employment when he caused the injury to appellee. For that reason the judgment of the trial court is reversed and the cause of action is dismissed.

Reversed.

MILLWEE and GEORGE ROSE SMITH, JJ., dissent.

GEORGE ROSE SMITH, J., dissenting. It should first be observed that this case does not involve a material deviation from the servant's authorized route, as was true, for example, in *Healey* v. *Cockrill,* 133 Ark. 327, 202 S. W. 229, L. R. A. 1918D, 115. Here the home of Wilson's father-in-law abutted the highway that Wilson was traveling in the course of his employment; he parked on the shoulder of the road in order to talk with his wife. Had Wilson started his truck after the conversation and negligently struck a stranger standing by the road, it goes without saying that the liability of the master would have been an issue for the jury.

Here, however, the evidence indicates that Wilson acted willfully and maliciously, rather than with carelessness only, and the jury so found, by its award of punitive damages. This finding absolves the master of liability only if the undisputed evidence shows that Wilson's intentional conduct was actuated solely by a personal motive.

"An act of a servant is not within the scope of employment if it is done with no intention to perform it as a part of or incident to a service on account of which he is employed. . . . It is the state of the servant's mind which is material." Rest., Agency, § 235. "The fact that the predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment. If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act otherwise is within the service. . . ." Ibid., § 236. Mechem puts the matter accurately in § 1929 of his work on Agency: "It is obvious, therefore, that the question of the principal's or master's liability cannot always be deter-

mined merely by putting a label on the motive. The motive is important, but it is important not so much for the purpose of determining how the act was done as to aid in deciding whose act it was." See also Prosser on Torts (2d Ed.), § 63.

I do not understand our own cases to be contrary to the views just mentioned; indeed, the majority's quotation from *Sweeden* v. *Atkinson Imp. Co.*, 93 Ark. 397, 125 S. W. 439, 27 L. R. A. N. S. 124, is fully in accord with the position taken by the textwriters on the subject.

In this case I should agree with the majority if Wilson had simply pushed his wife violently from the truck; that conduct would undoubtedly have been actuated solely by a personal motive. But here Wilson said, "Get the hell out; I'm going," and the starting movement of the vehicle contributed to the appellee's injuries. Since I am unable to say positively and unequivocally that the purpose of serving his master's business did not actuate Wilson "to any appreciable extent," I am of the opinion that the evidence presented a question for the jury.

Millwee, J., joins in this dissent.