George V. DEARING, Plaintiff,

v.

H. C. FERRELL, Don Ferrell, W. K. Ferrell and P. G. Conner, d/b/a Kelly-Ferrell & Conner Funeral Home, and William Lynn Ferrell, Defendants.

Civ. A. No. 1432.

United States District Court
W. D. Arkansas,
Fort Smith Division.

Sept. 18, 1958.

Peter G. Estes, Fayetteville, Ark., for plaintiff.

Greenhaw & Greenhaw, Fayetteville, Ark., Wear & Wear, Springfield, Mo., for defendants.

JOHN E. MILLER, District Judge.

This case was originally filed in the Circuit Court of Washington County, Arkansas, and in due time removed by the defendants to this court. W. K. Ferrell (W.E.) was a defendant, but the plaintiff dismissed as to the defendant, W. K. Ferrell, and the case went to trial to the court without a jury with George

V. Dearing as plaintiff and H. C. Ferrell, Reathel Ferrell, Don Ferrell, Mary Frances Ferrell, P. G. Conner and Wandaleen Conner, and William Lynn Ferrell as defendants.

The plaintiff alleged that the defendant, William Lynn Ferrell, was an employee of the other defendants who were and are engaged in business as partners under the name of the Kelly-Ferrell & Conner Funeral Home; that the partnership was the owner of a 1952 Pontiac ambulance, which was being driven by the defendant, William Lynn Ferrell, employee, on February 1, 1958, and that the said William Lynn Ferrell, while acting within the scope of his employment and driving the ambulance, negligently struck the ½-ton Chevrolet truck which plaintiff was driving upon the highway; and as a result of the negligent acts and omissions (specifically alleged in the complaint) of the driver of the ambulance, the plaintiff received personal injuries and the truck was damaged.

Plaintiff also alleged that the defendant, William Lynn Ferrell, as an employee of the defendant partners and while acting within the scope of his employment, "wilfully, carelessly, negligently and unlawfully (did) imbibe alcoholic liquor when he knew or by the exercise of ordinary care on his part, could or should have known that he was taking into his stomach, a substance that would stupefy his senses, retard his muscular and mental reaction and impair, if not destroy, the perfect coordination of eye, brain and muscles, that were essential to the operation of a vehicle such as he was driving down a well-traveled highway such as Highway No. 68 as aforesaid."

The plaintiff prayed for actual damages for the personal injuries and damage to his truck, and also for punitive damages.

In due time the defendant partners filed their answer in which they admitted that the defendant, William Lynn Ferrell, was an employee of the partnership, but denied that at the time of the collision complained of by the plaintiff that the

said William Lynn Ferrell was acting within the scope of his employment.

The partnership further alleged that the plaintiff was guilty of contributory negligence, and specifically alleged acts and omissions by plaintiff as constituting contributory negligence.

The defendant, William Lynn Ferrell, filed a separate answer in which he alleged that the plaintiff was guilty of contributory negligence, and alleged specific acts on the part of the plaintiff as constituting contributory negligence. He also admitted that he was an employee of the defendant partnership, but specifically denied that at the time of the collision between the plaintiff's truck and the ambulance owned by the defendant partnership, and being driven by him as the employee of the partnership, that he was acting within the scope of his employment.

Prior to the filing of the answers by the defendants, the plaintiff had filed an amendment to his complaint, in which he alleged that the defendant partnership had "wilfully, carelessly and negligently placed the said motor ambulance in the control of the defendant, William Lynn Ferrell, and permitted him to drive and operate same, when they knew, or by the exercise of ordinary care on their part, could or should have known that he was in the habit of drinking intoxicating liquors and was a careless and reckless driver."

The allegation in the amendment to the complaint was denied in the answers of the defendants.

The case was tried to the court on September 2 and 3, 1958, and at the conclusion of the testimony was submitted, and counsel for the respective parties were requested to submit briefs on the question of whether the defendant, William Lynn Ferrell, at the time of the collision was acting within the scope of his employment.

The briefs of the parties have been received and have been considered along with all of the testimony, exhibits thereto, depositions, admissions, and answers to interrogatories, and the court now makes and files herein its Findings of Fact and Conclusions of Law, separately stated.

### Findings of Fact

**1.**

The plaintiff is a citizen of the State of Arkansas and resides in Washington County within the Western District of Arkansas.

The defendants are citizens and residents of the State of Missouri.

The amount involved is in excess of $3,000, exclusive of interest and costs.

**2.**

The partnership owns four funeral homes all located on U. S. Highway 60, slightly southeast of Springfield, Missouri. One of the homes is at Rogersville, one at Fordland eight miles east of Rogersville, one at Seymour ten miles east of Fordland, and one at Mansfield twelve miles east of Seymour. The defendant, William Lynn Ferrell, was manager of the funeral home at Fordland. Apparently he was the principal employee as he testified that he drove the ambulance, assisted at funerals, and did whatever was necessary to be done in the operation of the business.

On the morning of February 1, 1958, he left Fordland to transport a resident of Fordland to the Veterans Hospital at Fayetteville, Arkansas. The transportation was arranged by himself and the passenger. The only information that any of the members of the partnership had about the trip was given to the one that lived at Rogersville after the arrangements had been completed, and he was merely advised that the trip would be made and that the person would be taken to the hospital at Fayetteville, Arkansas, in the ambulance by the defendant, William Lynn Ferrell. No orders of any kind were given by any of the partners to William Lynn Ferrell, and the inference is that he had complete authority to make the trip and select and use any route to and from Arkansas that he might desire. The defendant, Wil-

liam Lynn Ferrell, left Fordland in the ambulance with the passenger, and followed U. S. Highway 60 to State Highway M, thence on State Highway M to U. S. Highway 60 at Republic, Missouri, thence from Republic to Monett, Missouri, on U. S. Highway 60, thence from Monett to Seligman, Missouri, on State Highway 37, and from the Missouri State line over Arkansas State Highway 47 to Gateway, Arkansas, thence on Highway 62 to Rogers, Arkansas, and thence on Highway 71 to Fayetteville, Arkansas.

When he arrived in Fayetteville, he delivered the passenger to the hospital, and then drove to near the center of the City of Fayetteville, Arkansas, where he parked the ambulance and proceeded to a restaurant for dinner. Before eating he drank three cans or bottles of beer, and after he had had his dinner, he left the restaurant and returned to the vicinity of where the ambulance was parked, but before reaching the ambulance, he entered a beer parlor and there drank three more cans or bottles of beer.

The he left Fayetteville, driving north on U. S. Highway 71 until he reached Springdale, Arkansas. At that town he turned west on State Highway 68, and had driven approximately five miles on Highway 68 when he drove the ambulance against the truck of the plaintiff. The defendant testified that he was intending to go to Siloam Springs, a distance of 27 miles from Springdale, to see a friend. He did not say whether he expected to spend the night at Siloam Springs or what route he intended to take from Siloam Springs to Fordland, Missouri.

Reference to a road map discloses that State Highway 59 runs north from Siloam Springs to Neosho, Missouri, thence Highway 60 runs from Neosho east to Monett, Missouri, and thence from Monett to State Highway M at Republic, Missouri, and thence Highway M, south of Springfield, east to Galloway on U. S. Highway 60, and thence east on Highway 60 to Fordland. A study of the standard highway mileage guide pub-

lished by Rand McNally & Co. discloses that had the defendant, William Lynn Ferrell, traveled to Siloam Springs, Arkansas, and from thence to Fordland, Missouri, he would have traveled approximately 50 miles farther on his return trip than he would had he returned from Fayetteville on the route that he used in making the trip from Fordland, Missouri, to Fayetteville, Arkansas.

As stated above, the defendant driver of the ambulance had proceeded only five miles westward on Highway 68 when he approached the intersection of State Highway 112 from the south. At that point the pavement of Highway 68 is 22 feet wide, and the pavement on Highway 112 is 19 feet wide. Highway 112 does not cross Highway 68, but there is another improved county highway leading north from a point slightly west of the intersection of Highway 112 with Highway 68.

The plaintiff had been working at the Famous Hardware Company in Springdale on February 1, and was on his way home. He lived on Highway 112, one mile south of its intersection with Highway 68, so that when the plaintiff reached the intersection, it was necessary for him to make a left turn to go south on Highway 112. The defendant driver saw the plaintiff stop at the intersection and give the signal with his arm indicating his intention to turn left. At that time the defendant driver was at least 200 yards east of the intersection, and was traveling according to his own testimony 70 miles per hour. There were other automobiles on Highway 68 traveling from west to east, and the plaintiff stopped at the intersection to permit those automobiles, some two or three in number, to clear the intersection. The defendant driver admitted that he made no effort to stop when he first saw the plaintiff stop at the intersection, as he thought the plaintiff would have time to make the left-hand turn into Highway 112, but when the defendant driver was 162 feet east of the intersection, he applied his brakes, and the ambulance veered from the right-hand, or north traffic lane,

into the left-hand or south traffic lane. The ambulance skidded the entire distance of 162 feet and collided with the truck of plaintiff in the southeast corner of the intersection, south of the center line on Highway 68 and east of the center line on Highway 112.

The point of impact was, as stated, in the southeast corner of the intersection and approximately half the distance from the center line of Highway 68 to the south line of Highway 68. The plaintiff's truck was struck on the left rear corner, and was shoved a distance of 36 feet and turned halfway around so that when it came to rest, it was headed north on the east edge of Highway 112. The ambulance, after striking the truck, moved in a northwesterly direction diagonally across the intersection and into a ditch along the west side of the county road extending north from Highway 68, and traveled a total distance of 180 feet before coming to rest.

The collision occurred about 6:30 p.m., when it was dark enough to have lights on all automobiles. Soon after the collision an Arkansas State patrolman arrived, and after making an investigation and talking to the plaintiff and the defendant driver, he took the defendant driver into custody and returned him to Springdale, where on Tuesday, February 4, he was arraigned upon a charge of driving while under the influence of intoxicating liquor. To this charge he entered a plea of guilty in the Municipal Court of Springdale, and a fine of $100 and costs was assessed against him.

The State patrolman and others testified that the driver of the ambulance was under the influence of intoxicating liquor, and that he had difficulty in walking and in moving about. The smell of intoxicating liquor was strong on his breath, and while at the scene of the collision he had difficulty in his articulation.

### 3.

When the ambulance struck the truck of plaintiff, plaintiff was thrown against the left door of the truck. He immediately complained that his left arm was injured and that he was suffering pain from it as well as pain extending from the middle of his shoulders upward to the base of his skull. However, plaintiff drove the truck to his home, one mile distant from the collision, and when he arrived there, he fed his livestock hay and then ate a very light dinner and retired for the night. The next morning he drove to Siloam Springs to deliver a Magic Chef range, which he had in the truck at the time of the collision. While in Siloam Springs he conferred with Dr. Baggett, a boyhood friend. Dr. Baggett advised him that if he did not feel better the next morning to return for further examination.

Instead of returning to Dr. Baggett's office, he went to Fayetteville, and there was examined by Dr. Coy C. Kaylor, an orthopedic specialist. Dr. Kaylor's examination disclosed a rather acute tenderness over the cervical spine. The muscles of the neck were sprained, and muscular spasms were present. X-rays were taken which disclosed an existing degeneracy in the fifth cervical vertebra. The condition of the fifth cervical vertebra had existed for some time prior to the collision, and Dr. Kaylor stated that it was impossible to determine whether the vertebra had been crushed by trauma or whether its condition was the result of arthritis. Whatever the cause was, the injury was aggravated by the striking of the left arm and left shoulder against the interior of the truck at the time of the collision. The plaintiff continued under the treatment of Dr. Kaylor from February 5 to July 26, and incurred a medical bill of $187.50. He was kept under mild sedation during most of that time, and was furnished a cervical spine brace with instructions to wear it, particularly when he was driving or exposed to any danger whatsoever. The plaintiff did not follow the directions of Dr. Kaylor, and only wore the brace a few days, but wore it practically every night for six or seven weeks. Dr. Kaylor testified that the plaintiff had a permanent partial injury of 15 to 20 percent.

The physicians who examined the plaintiff at the request of the defendants testified that the plaintiff had a permanent partial injury of from 5 to 10 percent.

The plaintiff lost only a few days from his work at the Famous Hardware Company, where he had been employed for 14 years, although he stated that he was able to do only about 75 percent of the amount of work that he had prior to the collision. In addition to his work at the Famous Hardware Company in Springdale, the plaintiff was operating a dairy farm, and at the time of the trial he had reduced the number of his dairy cattle from 19 to 14, and at that time was only milking 8 cows. He testified that he was unable to operate as large a dairy after the collision as he was before.

Prior to the collision the plaintiff's truck was of the value of $1,500. After the collision its value was $600 or $700. Thus the damage to the truck was $800. The automobile dealer, who was entirely familiar with the truck before the collision and afterwards, testified that the difference between the value before and after the collision was $1,020. However, the automobile dealer repaired the truck at an expense of $321.43, but it is evident that the repairs did not restore the truck to the same efficiency or value as it had prior to the collision.

#### 4.

In response to interrogatories propounded by William Lynn Ferrell, the plaintiff stated that during the month of February he lost three days from his work at the Famous Hardware Company, two days in March, one day in April, one day in May, and one day in June, although his employer paid him without any deduction for the lost time. Plaintiff also stated in answer to an interrogatory that his total net income for the year 1957 from his employment at the Famous Hardware Company and his farming operation was $5,208.03, but he declined to answer whether his income tax return for the year 1957 showed his net earnings to be $5,208.03.

The discovery deposition of plaintiff taken on June 9, 1958, and filed herein on August 19, was introduced and disclosed some minor discrepancies with the testimony given by plaintiff at the trial.

#### Discussion

The jurisdiction of the court is based upon diversity of citizenship of the parties and the amount involved. The collision between the truck of plaintiff and the ambulance being driven by defendant, William Lynn Ferrell, occurred in the Western District of Arkansas, and, therefore, the governing substantive law is that of Arkansas.

The questions to be determined are:

(1) Was the defendant driver, William Lynn Ferrell, guilty of negligence in the operation of the ambulance on the highway, and if so, was his negligence a proximate cause of the collision between the ambulance and the plaintiff's truck?

(2) Was the plaintiff guilty of contributory negligence, and if so, was his negligence of less degree than the negligence of the defendant, William Lynn Ferrell?

(3) Did the plaintiff receive personal injuries and suffer property damage by reason of the collision?

(4) Was the defendant driver of the ambulance, William Lynn Ferrell, an employee of the defendant partners, and was said defendant acting within the scope of his employment at the time of the collision?

#### 1.

In Kisor v. Tulsa Rendering Co., D.C., 113 F.Supp. 10, at page 17 this court said:

"A person operating a motor vehicle upon the highways of the State of Arkansas must keep a lookout for vehicles or persons who may be upon the highway and must keep his motor vehicle under such control as to be able to check the speed or stop it, if necessary, to avoid injury to others when danger is apparent. Craighead v. Missouri Pacific

Transp. Co., 8 Cir., 195 F.2d 652, 656; Livingston v. Baker, 202 Ark. 1097, 155 S.W.2d 340; Loda v. Raines, 193 Ark. 513, 517, 100 S.W.2d 973; Lockhart v. Ross, 191 Ark. 743, 752, 87 S.W.2d 73."

Ark.Stat.Ann. Sec. 75–601 (1947), provides that in no event shall a motor vehicle be driven upon the highways of the State of Arkansas at a speed which would not be reasonable and prudent under the conditions then existing, "but in no event shall motor vehicles be driven upon highways of the State of Arkansas at a rate of speed greater than * * * passenger vehicles sixty (60) miles per hour."

Ark.Stat.Ann. Sec. 75–611 (1947), provides that no vehicle in overtaking and passing another vehicle or at any other time shall be driven on the left side of the roadway when approaching within 100 feet of or traversing any intersection or railroad grade crossing.

■■ Under the facts as established by the evidence and found by the court, the defendant driver of the ambulance was exceeding the speed limit. He did not have his vehicle under such control as to be able to check the speed or stop it in order to avoid striking the truck of plaintiff. He saw the plaintiff's truck waiting to make a left-hand turn into Highway 112. There were other automobiles traveling on Highway 68 approaching the intersection from the west, and it was the duty of the plaintiff to yield the right-of-way to such approaching vehicles from the west, or opposite direction. See, Ark.Stat.Ann. Sec. 75–622.

At the time the ambulance struck the plaintiff's truck, the truck had almost crossed the intersection and was struck in the southeast corner of the intersection. Had the defendant driver of the ambulance had his vehicle under reasonable control, he would have been able to either check the speed or remain in his right-hand lane, and thus avoid the collision entirely.

In Kisor v. Tulsa Rendering Co., supra, the court at page 16 of 113 F.Supp. said:

"Negligence, under Arkansas law, is the failure to do that which a person of ordinary care and prudence would do under the same or similar circumstances, or the doing of which a person of ordinary care and prudence would not do under the same or similar circumstances. St. Louis-San Francisco Ry. Co. v. Ward, 197 Ark. 520, 524, 124 S.W.2d 975; Self v. Kirkpatrick, 194 Ark. 1014, 1022, 110 S.W.2d 13.

"Negligence is the proximate cause of an injury only if the injury is the natural and probable consequence of the negligent act and ought to have been foreseen in the light of attending circumstances. Ozark Packing Co. v. Stanley, 211 Ark. 749, 202 S.W.2d 352; Hook, Administrator, v. Reynolds, 203 Ark. 259, 261, 156 S.W.2d 242; Southwestern Bell Telephone Company v. Adams, 199 Ark. 254, 261, 133 S.W.2d 867."

Under the facts the defendant driver of the ambulance was guilty of negligence which was a proximate cause of the collision of the ambulance with the plaintiff's truck.

2.

■ When plaintiff approached the intersection, he indicated by proper signal his intention to turn left into Highway 112. See, Ark.Stat.Ann. Sec. 75–619 (1947).

Sec. 75–615, supra, provides that the driver of a vehicle intending to turn at an intersection shall do so as follows:

"(b) Approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered."

That is precisely what the plaintiff did in preparing to make the left turn. Be-

cause of the approaching cars from the opposite direction, he was compelled to yield the right-of-way to them before attempting to make the left turn. In the meantime, the defendant driver of the ambulance was approaching from the east at 70 miles per hour, and did not have his vehicle under such control as to be able to check its speed or to stop it. Clearly the plaintiff was not guilty of contributory negligence, and the negligence of the defendant driver of the ambulance was the proximate cause of the collision and the injuries and damage to plaintiff.

3.

■ The plaintiff received personal injuries, and the only question is the extent of those injuries. The testimony of the physician introduced by the plaintiff and the two physicians introduced by the defendant discloses without doubt that plaintiff suffered pain, was unable to work for a few days although his employer did not deduct anything from his wages for the time lost. He was considerably handicapped in the operation of the dairy farm, and incurred a medical bill of $187.50 with the prospects of incurring additional expenses for medication during the next two or three months.

In Kisor v. Tulsa Rendering Co., supra, at page 19 of 113 F.Supp., this court, in quoting from Coca-Cola Bottling Co. of Arkansas v. Adcox, 189 Ark. 610, at page 613, 74 S.W.2d 771, at page 772, said:

" 'The measure of damages for a physical injury to the person may be broadly stated to be such sum, so far as it is susceptible of estimate in money, as will compensate plaintiff for all losses, subject to the limitations imposed by the doctrines of natural and proximate consequences, and of certainty, which he has sustained by reason of the injury, including compensation for his pain and suffering, for his loss of time, for medical attendance and support during the period of his disablement, and for such permanent injury and

continuing disability as he had sustained. Plaintiff is not limited in his recovery to specific pecuniary losses as to which there is direct proof, and it is obvious that certain of the results of a personal injury are unsusceptible of pecuniary ad-measurement.' "

The estimate of the physicians of the extent of such injuries is from 5 to 20 percent. The plaintiff also had an old injury to the fifth cervical vertebra caused either by trauma or arthritis. There is no doubt, however, that the bone injury was aggravated to some extent by the injury he received as a result of the collision. The court feels that an award of $1,750 for personal injuries, and medical bills is reasonable. The truck of the plaintiff was damaged in the sum of $800, which the plaintiff should recover.

■ In addition to the compensatory damages the plaintiff, under the evidence and the facts as found by the court, is entitled to an award for punitive damages. There is no proof of malice or willfulness on the part of the defendant driver of the ambulance, but the evidence discloses "wanton disregard of the rights and safety of others." After drinking six cans or bottles of beer, he entered the vehicle and undertook to drive it over an improved State highway. He not only violated the criminal laws of the State, but drove his vehicle without any regard whatsoever of the rights and safety of others using the highway, and, as stated in the case of Miller v. Blanton, 213 Ark. 246, 210 S.W.2d 293, 294, 3 A.L.R.2d 203, his conduct was such as to justify the court in finding that he exhibited "a 'wanton disregard of the rights and safety of others.' " Therefore, the court is of the opinion that the plaintiff, in addition to his compensatory damages, should recover from the defendant driver the sum of $1,000 as punitive damages.

4.

■ It is admitted that the defendant driver of the ambulance was a regular employee of the defendant partners, but

they deny that he was acting within the scope of his employment at the time of the collision. This contention is based upon the settled rule that a deviation from a given route, if substantial enough, may constitute a complete abandonment of the master's service, thus rendering the employee's acts outside the scope of his employment. This is the rule announced in the leading Arkansas case of Healey v. Cockrill, 133 Ark. 327, 202 S. W. 229, L.R.A.1918D, 115. See also, Bizzell v. Hamiter, 168 Ark. 476, 270 S. W. 602; Mullins v. Ritchie Grocer Co., 183 Ark. 218, 35 S.W.2d 1010; Page Lumber Co. v. Carman, 214 Ark. 784, 217 S.W.2d 930; Annotation 51 A.L.R.2d 8.

Ordinarily in this situation the question to be determined is whether deviation is merely slight or whether it is so extensive as to constitute an abandonment of the master's service.

In Healey v. Cockrill, supra, after discussing the principles of law applicable when deviations or detours were made by the servant in performing his master's business, the court on page 331 of 133 Ark., on page 230 of 202 S.W. said:

"If a servant completely turns aside from the master's business and pursues business entirely his own, the master is not responsible. On the other hand, if he is engaged in the master's business, but performs it contrary to instructions or without express authority as to the particular manner of doing the work, the master is liable. Much is said in the adjudged cases about the doctrine of slight deviations or 'detours' made by the servant in performing his master's business, and the rule seems to be settled by the weight of authority that, where the servant is pursuing the general course necessary, to accomplish the purposes involved in his master's business the responsibility of the master is not lessened by the fact that the servant for purposes of his own deviates from the route to be pursued or the particular method to

be observed in performing the service. The fact that the servant acts also for himself, while performing service for his employer, and in doing so, diverts from the usual route or method of performing the service, will not exonerate the employer from responsibility for misconduct of the servant. Sometimes the extent of the deviation may be so slight, relatively, that as a matter of law it can be said that it does not constitute a complete departure from the master's service, while under other circumstances the deviation may be so marked that it can be said as a matter of law that it does constitute an abandonment of the master's service, while under still other circumstances the deviation may be so uncertain in extent or degree that it leaves a question of inference to be drawn by a trial jury as to whether or not there has been such an abandonment as to relieve the master from responsibility for the servant's act."

After reviewing the undisputed facts in the case, the court, beginning on page 333 of 133 Ark., on page 231 of 202 S.W., said:

"We do not think that the facts of the present case bring it within the rule of slight deviation from the employer's service, or a mere incidental departure from the service to mingle it with purposes of the servant's own, but that it is a case of complete abandonment or departure from the employer's business and a stepping aside wholly for the servant's own purpose. The distance traveled by the servant in going upon his own errand was not very great, but it was considerably out of proportion with the distance necessary to travel in obeying the instructions of his employer. In other words, the relative distance was too great to be called a slight deviation, and the departure from the line of duty was so complete that the connection with the employer's service

was completely broken. In order to perform the employer's service it was unnecessary for the servant to leave the immediate proximity of the employer's premises. He did not even have to cross any of the streets, but his journey from the back of the premises to the front was merely to follow the same side of the street half way around the block. Instead of following that course, the servant left the premises entirely and went off on an errand of his own to purchase an article for his private use, and in order to make that trip in observance of the traffic rules, it was necessary for him to travel the distance of 6½ blocks in getting back to the front of his employer's residence. The servant, in leaving the premises in order to make the trip to the store, was not mingling his own business with that of his employer, but he was stepping aside entirely from the employer's business to go on an errand of his own, and this is true even though he intended to dispose of the car, on his return, in accordance with the employer's direction."

However, it is unnecessary to determine here whether the deviation was slight, or whether it was so great as to warrant a finding that the employee was outside the scope of his employment. It is likewise unnecessary to determine whether the controlling factor is the extent of the employee's deviation at the time of the collision, or whether it is the extent of deviation which would have occurred had the employee followed his original plan without mishap.

■ It is a settled principle under the decisions of the Arkansas Supreme Court that when a vehicle belonging to the employer is being operated by one of the employer's regular employees and a collision occurs, a presumption of fact is created that the employee was within the scope of his employment.

This presumption, of course, may be overcome by evidence to the contrary. Such is the rule laid down in Mullins v. Ritchie Grocer Co., supra. In that case the court stated that the mere fact that the accident occurred after the usual business hours did not necessarily defeat a presumption that the employee was within the scope of his employment.

In Ford & Son Sanitary Co. v. Ransom, 1948, 213 Ark. 390, at page 393, 210 S.W.2d 508, at page 509, the court said:

" * * * when the plaintiff showed that the truck which inflicted the injury was owned by the defendant company, and was at that time being driven by the said defendant company's regular employee, then such proof raised a temporary presumption that the employee was in the scope of his employment. The defendant company, to avoid liability, was then obliged to introduce substantial proof directed to the negation of scope of employment."

This rule is approved in the recent cases of Page Lumber Co. v. Carman, supra, and Bullock v. Miner, 225 Ark. 897, 286 S.W.2d 328.

■ Under the rule approved in these cases the employee driver of the defendant partners is presumed to be within the scope of his employment until substantial evidence is produced to the contrary. None of the defendant partners testified, and the only testimony concerning the authority of the driver, William Lynn Ferrell, was that of William Lynn Ferrell himself. He testified that he had intended to visit an acquaintance at Siloam Springs, Arkansas, but did not testify whether the purpose of the visit was firm business or a personal social call. Neither did he testify as to what use he was ordinarily allowed to have of his employer's vehicle which he was driving at the time of the collision. He was designated as "manager" of the Fordland branch of the partners' business. The arrangements to drive to Fayetteville were completed and the trip started within an hour. Ferrell did not request permission from anyone to make the trip, but merely notified one of the partners that he was leaving. He ap-

parently was in complete charge of the funeral home at Fordland, Missouri. There was no testimony as to the precise scope of his authority or employment, and there was no testimony as to any limitations placed upon him by the defendant partners. He was not instructed as to the route he should follow, either on the trip from Missouri to Arkansas or on the return trip. A fair inference would be, at least in the absence of evidence of any specific limitations, that William Lynn Ferrell had authority to drive the ambulance where and by what route he saw fit. Whether such inference is drawn or not, however, the defendants failed to produce any substantial evidence showing limitations upon the driver's authority or employment which would place him outside the scope of his employment in this case, and so rebut the presumption that he was within the scope of his employment.

### Conclusions of Law

**1.**

The court has jurisdiction of the subject matter and the parties to this action.

**2.**

The defendant driver, William Lynn Ferrell, was guilty of negligence in the operation of the ambulance, which negligence was the sole proximate cause of the collision between the ambulance and the plaintiff's truck and the sole proximate cause of the injuries and damages to the plaintiff.

**3.**

The plaintiff, George V. Dearing, was not guilty of any negligence in the operation of his truck which in any way caused or contributed to the collision between the defendant's ambulance and the plaintiff's truck.

**4.**

The plaintiff, George V. Dearing, should be compensated for personal injuries, including pain and suffering, medical expenses, past and future, in the sum of $1,750, and for property damage in the further sum of $800.

**5.**

The defendant driver was guilty of a wanton disregard of the rights and safety of others on the highway, and the plaintiff is entitled to recover the further sum of $1,000 as punitive damages.

**6.**

The defendant driver of the ambulance, William Lynn Ferrell, was an employee of the defendant partners, and at the time of the collision was acting within the scope of his employment.

**7.**

The plaintiff is entitled to recover of and from the defendants and each of them, jointly and severally, the sum of $2,550 for his personal injuries, medical expenses, and property damage, and the further sum of $1,000 as punitive damages, together with his costs.

A judgment in accordance with the above should be entered.